OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiff seeks summary judgment in this mortgage foreclosure action (commenced in Nov. 1993), and defendant mortgagor cross-moves for dismissal of the complaint. In February 1999, the County of Delaware obtained title to the subject property through foreclosure of a tax lien, pursuant to Real Property Tax Law article 11. Although plaintiff mortgagee received notice of the tax foreclosure proceeding, the property was not redeemed — by plaintiff or defendant — within the time allowed for doing so. The property was scheduled to be sold at public auction on July 10, 1999, but before that sale could take place (indeed, the preceding day), the County sold the property to defendant for $3,689.42. Defendant contends that the tax foreclosure extinguished plaintiff’s rights in the property, thus compelling dismissal of the instant action.
Plaintiff contends that the purported sale to defendant was invalid, because the County did not comply with its own procedures for selling tax-acquired property, and because defendant could not “redeem” his property after the deadline for doing so had passed. Alternatively, plaintiff argues that if there was a valid sale to defendant, the “warranty” and “after-acquired property” clauses in the mortgage acted to revive its lien upon the property when defendant regained ownership after the tax foreclosure, and that defendant should not be permitted to profit from his own “wrongdoing” in failing to pay his taxes. Defendant disagrees, noting, inter alia, that the extinguishment of plaintiff’s rights in the property resulted not from the fact that he, defendant, didn’t pay the taxes, but from plaintiff’s own failure to take the necessary steps to preserve its position, by redeeming the property from the tax foreclosure within the period for doing so.
The relevant statute clearly provides that upon issuance of a final judgment of foreclosure, and execution of a deed convey *427 ing title to the tax district in accordance therewith, the tax district obtains “full and complete title” to the property at issue, and that “all persons * * * who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption” (RPTL 1136 [5]). Indeed, plaintiff does not dispute that upon execution of the deed on February 17, 1999, the County received full and complete title, in fee simple, to the subject property, free and clear of any lien or encumbrance held by plaintiff (cf., Melahn v Hearn, 60 NY2d 944, 946).
The court must therefore consider plaintiff’s arguments with respect to the validity and effect of the County’s purported resale to defendant. If there was no valid resale, title to the property would remain in the County (and plaintiff could take steps to purchase it directly, as it had apparently intended to do at the scheduled auction). Although plaintiff maintains that the sale was a nullity, either because it was not conducted in accordance with the County’s own procedures for conducting a public auction sale, or because defendant could not legally purchase the property after the time for redemption had passed, the court is unconvinced. A tax district may sell property that it has obtained through foreclosure at a public auction, but it is not required to do so. RPTL 1166 expressly contemplates such private sales, in that it provides for (and mandates) the approval thereof by “a majority vote of the governing body of the tax district” (RPTL 1166 [2]), unless the sale is made by public auction (in which case such approval need not be obtained). Were a public auction the only means of selling such property, the approval language would be unnecessary. And, inasmuch as the property was not sold at auction, the County’s restrictions on who may bid at such an auction are simply inapplicable.[1] Lastly, plaintiff cites no relevant authority for the proposition that a former owner who has not redeemed his or her property within the time for doing so is thereby precluded from subsequently purchasing that property from the taxing district, if the requisite approval can be secured from the Board (as it was here).
*428 Having rejected plaintiffs argument that there was no valid sale to defendant, the court shall now turn its attention to plaintiffs contention that its mortgage lien somehow “sprang back” into existence automatically when defendant reacquired the property. The mere fact that a property, taken by a municipality for the nonpayment of taxes, is then resold to the delinquent taxpayer/mortgagor, does not — without more— constitute a basis for finding that the mortgage lien remains valid thereafter (see, Melahn v Hearn, 92 AD2d 319, affd 60 NY2d 944, supra). In light of, inter alia, the “specific and emphatic language” {supra, at 323) regarding the effect of a failure to redeem that is included in the more recent versions of the tax foreclosure and sale statutes, the Appellate Division (and ultimately the Court of Appeals) held that the older “delinquent purchaser doctrine” (at 334) has no application to proceedings conducted in accordance with those statutes. Moreover, the court concluded that under circumstances akin to those presented here, the ensuing loss of rights by the mortgagee cannot be said to be the result of any wrongdoing of the mortgagor, but rather that it was “due to the mortgagee’s own unexplained fault” (supra, at 324).
One court attempted to distinguish the facts presented in Melahn (supra) from those before it in a similar case, by noting that in Melahn, “no mention was made of a warranty clause and the decision does not speak of after-acquired title” (Salamanca Fed. Sav. & Loan Assn. v Darrow, 162 Misc 2d 729, 731 [Cattaraugus County Ct]).[2] Relying on those aspects of the mortgage at issue, the Salamanca court held that despite the extinguishment of plaintiffs lien by the tax foreclosure, defendant’s subsequent purchase of the premises “brought the mortgages back into existence” (at 732), recreating plaintiffs liens thereon.
This court is not convinced that newly acquired property can be deemed to “feed” a mortgage which has been “extinguished” and is “unenforceable” (Melahn v Hearn, 60 NY2d, supra, at 946), essentially bringing back into existence a mortgage relationship after the same has been terminated by foreclosure. *429 The terms of a mortgage instrument may operate to create a lien on additional property that is acquired while the mortgage is in existence, but they cannot bring the mortgage itself back into existence after it has been extinguished. To hold otherwise would be to adopt the self-contradictory proposition that rights can be created by the terms of a document that has been rendered inoperable and unenforceable.
Moreover, to do so would be to allow another “bite of the apple” for a mortgagee that has chosen to sit on its rights, by failing to redeem the property while it had the right and opportunity to do so. Equity does not require that the court strain to interpret the terms of a mortgage in a manner that is contrary to reason, merely to salvage for the mortgagee rights that it has lost as a result of its own neglect or tactical decision.
Accordingly, plaintiffs motion for summary judgment of foreclosure must be, and hereby is, denied, on the ground that its mortgage lien has been extinguished.
Plaintiff has, however, requested that if defendant prevails on his claim that the mortgage has been rendered unenforceable by the tax sale (as he has), the court “convert this action to an action on the Note and enter judgment accordingly” (affidavit of Christopher P. Schueller, Esq., dated Oct. 15, 1999, 15). While the court is unaware of any basis for such a direct “conversion,” it is clear that no prejudice will accrue to defendant if plaintiff is permitted to amend the complaint to seek judgment on the note, rather than foreclosure. An intervening tax foreclosure has been held to constitute a “special circumstance” sufficient to permit the interposition of a claim for recovery on the note, after the commencement of a mortgage foreclosure action (see, 1 Bergman, New York Mortgage Foreclosures § 7.12 [1], at 7-21; RPAPL 1301 [3]). Such a claim may be interposed by amendment, rather than commencement of a new action (see, Bank of N. Y. v Midland Ave. Dev. Corp., 248 AD2d 342, 343), and will “relat[e] back” to the initial date of commencement for limitations purposes (supra, at 344).
Thus, although the mortgage foreclosure cause of action is no longer viable, the action shall not be dismissed in its entirety, provided plaintiff files and serves an amended complaint, setting forth a claim for recovery on the note, within 20 days of service of this order with notice of entry. If no amended com *430 plaint is served within that time period, defendant shall submit an affidavit establishing that fact, and a proposed order dismissing the action, upon notice to plaintiff.

. Notably, the County’s procedures also recognize the possibility of a private sale prior to the auction date, as they provide (in accordance with the statutory requirements) that “[t]here shall be no sale of tax acquired property prior to the annual auction except to persons whose interest in the property is satisfactory to the Board” (affidavit of Christopher P. Schueller, Esq., dated Oct. 15, 1999 [emphasis added]).

. Significantly, even the Salamanca court conceded that the mere fact that the tax title was obtained by an in rem foreclosure pursuant to Real Property Tax Law article 11, rather than by the method set forth in article 10 (as had been the case in Melahn, supra), did not constitute a material distinction that would, without more, have warranted a different result (see, Salamanca Fed. Sav. & Loan Assn. v Darrow, supra, at 731). This court agrees.