OPINION OF THE COURT
Robert J. Muller, J.
Frontier Town was an amusement park located in respondent/defendant Town of North Hudson, Essex County. It closed over a decade ago and much of the park — comprised of several parcels of land — was acquired by respondent/defendant County of Essex in tax foreclosure proceedings and has now fallen into disrepair. In November 2013, the Town Supervisor — Ronald Moore — approached the County Board of Supervisors about a possible resolution whereby the Town would acquire four contiguous parcels of the former amusement park (hereinafter referred to as the Frontier Town parcels) without consideration, as the Town hoped to construct a snowmobile and horseback riding trail.[1] In response, the Board formed a Task Force Committee to determine whether the Frontier Town parcels should be transferred to the Town, sold privately or sold at public auction and appointed Supervisor Moore as Chairman.
Ultimately, the Task Force Committee recommended that the Frontier Town parcels be sold at public auction with a reserve price of $145,000, the total amount of taxes owed. Then, if the parcels did not sell for $145,000 or more, the County could reconsider the Town’s request for the property. The Board subsequently passed a resolution scheduling the public auction for all tax foreclosure properties — including the Frontier Town parcels — for April 30, 2014. Apparently as the result of an oversight, the resolution failed to include a reserve amount for *981 the Frontier Town parcels and, as a result, none was set at the auction. Petitioner/plaintiff George Moore then purchased the property at the auction for $49,500.[2] At the time of purchase, petitioner executed a “Contract of Sale,” as well as certain “Terms and Conditions of the Auction” which provided, in pertinent part: “All sales are subject to approval by the Essex County Board of Supervisors, which shall have the right, in the Board’s sole discretion, to reject any bid for any reason whatsoever.”
Upon learning of the sale, it appears that Supervisor Moore circulated an email to the Board proposing that the Town pay $49,550 for the Frontier Town parcels, and then a second email increasing the proposed sale price to $60,000. A special meeting was held on May 12, 2014, at which time the Board passed a resolution rejecting petitioner’s bid. On that same date, negotiations were held and Supervisor Moore amended the Town’s proposal so as to add a condition that if the Town sold the Frontier Town parcels within five years for more than $60,000, then it would pay the County one third of the sale price.
Petitioner was subsequently apprised of these negotiations and presented a second bid to the Board in the amount of $65,000. On June 3, 2014, the Board passed two separate resolutions, one rejecting petitioner’s second bid and the other authorizing transfer of the Frontier Town parcels to the Town for $60,000, plus one third of the sale price of the parcels in the event they were sold within five years for more than that amount. Petitioner then commenced this hybrid CPLR article 78 proceeding and declaratory judgment action on June 13, 2014, simultaneously filing a notice of pendency relative to the property. Petitioner seeks an order vacating the Board’s May 12, 2014 and June 3, 2014 resolutions and directing the County to accept his original bid of $49,500 or, alternatively, his second bid of $65,000.[3] The County and the Town have both appeared in opposition to the relief requested.
At the outset, the court notes that the Town held a referendum on September 18, 2014 and rejected the proposed purchase of the Frontier Town parcels as approved in the June 3, 2014 *982 resolution. The dispute remains ripe for review, however, as the parcels are still owned by the County and transfer to the Town — with or without consideration — remains a possibility (see Hussein v State of New York, 81 AD3d 132, 136 [2011], affd 19 NY3d 899 [2012]). With that said, the court will proceed to the merits of the controversy.
Petitioner contends that RPTL 1166 (2) precludes the County from rejecting the highest bid obtained for a property at public auction. RPTL 1166 provides as follows:
“1. Whenever any tax district shall become vested with the title to real property by virtue of a foreclosure proceeding brought pursuant to [RPTL article 11], such tax district is hereby authorized to sell and convey the real property so acquired, either with or without advertising for bids, notwithstanding the provisions of any general, special or local law.
“2. No such sale shall be effective unless and until such sale shall have been approved and confirmed by a majority vote of the governing body of the tax district, except that no such approval shall be required when the property is sold at public auction to the highest bidder.”
The court begins its analysis “with the familiar maxim that the text of a statute is the best evidence of legislative intent and, ‘where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ” (Matter of Retired Pub. Empls. Assn., Inc. v Cuomo, 123 AD3d 92, 94-95 [2014], quoting Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 60 [2013]). Here, RPTL 1166 (2) plainly states that the governing body of a tax district is not required to approve a sale made at public auction. It does not, however, include any language precluding a tax district from doing so. In other words, RPTL 1166 (2) does not preclude a tax district from adopting a policy whereby sales made at public auction are not effective until approved by the governing body.
Indeed, this interpretation is fully supported by the legislative history of RPTL 1166, which was originally enacted in 1958 and then amended in 1993. At that time, the legislature conducted a massive overhaul of the Real Property Tax Law, repealing article 10 and revamping article 11. The stated purpose of the overhaul was to “comprehensively revise! ] and *983 strengthen! ] procedures for the collection of real property taxes, while giving local governments greater administrative flexibility” (Assembly Mem in Support, Bill Jacket, L 1993, ch 602). In keeping with this stated purpose, RPTL 1166 remained “without substantive change, except that the approval of the legislative body would not be required where a sale [was] made to the highest bidder at a public auction” (Mem of Div of Equalization and Assessment, Bill Jacket, L 1993, ch 602 at 46). By eliminating the requirement that the legislative body approve such a sale, the legislature was giving local governments more flexibility. If they wanted to approve sales made to the highest bidder at public auction, they were free to do so— but it was no longer required.
It must also be noted that, while the question before the court appears to be one of first impression, of those cases that have dealt with RPTL 1166 in the past, all seem to suggest that a tax district is free to adopt a policy whereby sales made at public auction are not effective until approved by the governing body (see Kennedy v Mossafa, 100 NY2d 1, 8 [2003]; Matter of Johnstone v Treasurer of Wayne County, 118 AD3d 1378 [2014]; Matter of Belardo v City of Schenectady, 28 AD3d 986, 988 [2006]; First Natl. Bank of Downsville v Atkin, 183 Misc 2d 425, 427 [Sup Ct, Delaware County 2000], affd 279 AD2d 779 [2001]). The court therefore finds that RPTL 1166 (2) does not preclude the County from rejecting the highest bid obtained for a property at public auction. Rather, the County was entitled to implement a procedure whereby all sales to the highest bidder at public auction were subject to approval by the Board and, further, to utilize this procedure in rejecting petitioner’s bids on the Frontier Town parcels (see Matter of Johnstone v Treasurer of Wayne County, 118 AD3d 1378 [2014]).
Insofar as the County’s subsequent conveyance to the Town is concerned, General Municipal Law § 72-h (a) provides that “the supervisors of a county . . . may sell, transfer or lease to or exchange with any municipal corporation or municipal corporations . . . either without consideration or for such consideration and upon such terms and conditions as shall be approved . . . any real property owned by such county . . . .” Here, the Board concluded that transfer of the Frontier Town parcels to the Town was most beneficial to the County because, inter alia, the planned snowmobile and horseback riding trail was to extend into the Towns of Newcomb and Minerva, becoming part of a so-called “Community Connector Trail” that would *984 draw people to the area. The Town also planned to subdivide the road frontage and work with the Essex County Industrial Development Agency to market the property in an effort to bring businesses and jobs to the area. While petitioner indicates that he too planned to develop the Frontier Town parcels and gave “written assurances to the Town . . . and the County . . . that if [he] purchased the property, [he] would give a permanent right for the continued use of [any] snowmobile trail,” the court cannot substitute its judgment for that of the Board unless it is shown that the Board’s judgment was clearly illegal — and here petitioner has made no such showing (see Matter of Cerro v Washington County Bd. of Supervisors, 247 AD2d 726, 727 [1998], lv denied 92 NY2d 811 [1998], appeal dismissed 92 NY2d 845 [1998]; cf. Matter of Dugan v Liggan, 121 AD3d 1471, 1473 [2014]). The County was therefore entitled to convey the Frontier Town parcels to the Town after rejecting petitioner’s bids on the property, and remains entitled to do so.
Briefly, inasmuch as petitioner contends in his reply memorandum of law that respondents breached their fiduciary duty by demonstrating collusion and favoritism and, further, that the Town is liable for tortious interference with the Contract of Sale, these contentions were not raised in the verified petition/complaint and are not properly before the court (see Matter of Garcia v Prack, 128 AD3d 1244 [2015]; Matter of Thurmond v Fischer, 112 AD3d 1234, 1235 [2013]). Any other arguments not expressly discussed herein have been considered and found to be without merit.
Based upon the foregoing, the relief requested is denied in its entirety, the verified petition/complaint dismissed and the notice of pendency vacated.

. The Frontier Town parcels constitute 89 acres of land, most of which is vacant forest land.

. Notwithstanding their shared surname, petitioner is in no way related to Supervisor Moore.

. Petitioner passed away on April 9, 2015 and the co-executors of his will — Philip S. Moore and William E. Russell — were substituted as his personal representatives by stipulation dated June 4, 2015 (see CPLR 1021).