[914 NYS2d 464]

Ayube Hussein, as Parent of a Student in the Albany City School District, et al., Respondents, v State of New York, Appellant.

Third Department, January 13, 2011

## APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Denise A. Hartman* of counsel), for appellant.

*The Biggerstaff Law Firm, L.L.P.*, Slingerlands (*Robert E. Biggerstaff* of counsel), for respondents.

## OPINION OF THE COURT

STEIN, J.

Plaintiffs—the parents of minor students in 11 different school districts outside the City of New York—commenced this declaratory judgment action in March 2009, alleging that their children are being deprived of the opportunity of a sound basic education, in violation of NY Constitution, article XI, § 1, because the school districts where the students attend school are substantially underfunded. Plaintiffs also requested injunctive relief to compel defendant to establish and maintain an education aid and funding system that would ensure that all

public school children throughout the state would receive a meaningful opportunity to receive an education meeting the minimum standards set forth by the Court of Appeals (*see generally Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14 [2006]; *Campaign for Fiscal Equity v State of New York*, 100 NY2d 893 [2003]; *Campaign for Fiscal Equity v State of New York*, 86 NY2d 307 [1995] [hereinafter referred collectively to as the CFE cases]).[1] Defendant moved to dismiss the action pursuant to CPLR 3211 on the basis that plaintiffs' claims are not ripe for review and/or are moot. Defendant now appeals from Supreme Court's denial of the motion.

Though we are loathe to enmesh the courts in a subject that primarily involves state fiscal policy and social policy concerns, rather than strictly legal issues, the Court of Appeals decision in *Campaign for Fiscal Equity v State of New York* (86 NY2d 307 [1995]) compels us to affirm. Courts must act with restraint and should avoid interfering with matters that generally fall within the province of the Executive and Legislature, so as to preserve the separation of powers. The Court of Appeals has expressed those concerns, yet determined that it would allow students and parents to sue defendant over school funding—a subject that not only has legal implications, but intimately intertwines them with budgetary issues and public policy choices (*see Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d at 28; *Campaign for Fiscal Equity v State of New York*, 100 NY2d at 925; *see also Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d at 34-35 [Kaye, Ch. J., concurring in part and dissenting in part]). Judge Rosenblatt's concurrence in the latest CFE decision noted that those cases dealt only with school funding in the City of New York, and that a statewide approach to this problem is best left to the Executive and Legislature (*see Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d at 33 [Rosenblatt, J., concurring]). While we wholeheartedly agree, and believe that those branches of government should be dealing with this issue without undue interference—potentially rising to the level of civil actions commenced on behalf of students in every school district across the state—we are constrained to hold that the present action must be permitted to proceed according to the course charted by the Court of Appeals.

---

1. In the CFE cases, the Court of Appeals ultimately established a baseline for the educational funding requirements of a sound basic education as guaranteed by NY Constitution, article XI, § 1.

Turning to the merits of defendant's arguments in the instant appeal, we note that, in order to warrant a determination of the merits of a cause of action, a party requesting relief must state a justiciable claim—one that is capable of review and redress by the courts at the time it is brought for review (*see Jiggetts v Grinker*, 75 NY2d 411, 415 [1990]). Defendant argues that plaintiffs' claims here are not ripe for review because they are based upon data obtained before the enactment of education aid reform legislation in 2007 (*see* L 2007, ch 57, as amended [hereinafter Foundation Aid]).[2] According to defendant, because Foundation Aid has not yet been fully implemented, the factual record is incomplete and the effects of the legislation cannot be measured.

As noted, the Court of Appeals has already determined in the CFE cases that the constitutionality of particular levels of education funding is a proper matter for consideration by the courts (*see Campaign for Fiscal Equity v State of New York*, 86 NY2d at 315). Moreover, "[t]he fact that the court may be required to determine the rights of the parties upon the happening of a future event does not mean that the declaratory judgment will be merely advisory" (*New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 530 [1977]). Although, in the typical case, the need for judicial intervention develops when, due to the actions of one of the parties, a dispute arises as to whether there has been a breach of duty or violation of the law, "when a party contemplates taking certain action a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive measures" (*id.* at 530). A distinction has been made between those cases in which the likelihood of a future event is controlled by the action or inaction of some third party and is, therefore, " 'wholly speculative and abstract' " (*Saratoga County Chamber of Commerce v Pataki*, 275 AD2d 145, 158 [2000], quoting *Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 240 [1984] [citation omitted]) and those cases in which " 'the future event is an act contemplated *by one of the parties,* [and] it is assumed that the parties will act in ac-

---

**2.** Foundation Aid was enacted in response to the CFE cases. Although the actions in which such decisions were rendered were brought by a not-for-profit corporation comprised of school districts, individuals and other organizations within the City of New York, the ensuing legislation purports to correct funding deficiencies throughout the state.

cordance with the law and thus the court's determination will have the immediate and practical effect of influencing their conduct' " (*Board of Educ., Shoreham-Wading Riv. Cent. School Dist. v State of New York*, 111 AD2d 505, 507 [1985], *lvs dismissed* 66 NY2d 603, 854 [1985], quoting *New York Pub. Interest Research Group v Carey*, 42 NY2d at 530-531; *compare Saratoga County Chamber of Commerce v Pataki*, 275 AD2d at 158).

■ Here, plaintiffs' complaint is replete with detailed data allegedly demonstrating, among other things, inadequate teacher qualifications, building standards and equipment, which illustrate glaring deficiencies in the current quality of the schools in plaintiffs' districts and a substantial need for increased aid. Plaintiffs allege that the poverty levels in their districts are higher than the state average and that there are greater funding deficiencies for at-risk students—including those with disabilities, those living in poverty, racial minorities and children for whom English is a second language. Notably, plaintiffs also submit evidence of factors that will allegedly continue to keep their districts underfunded and claim that, even with the increases anticipated as a result of Foundation Aid, their districts will still be substantially short of the funding levels needed to provide a constitutionally sound basic education.[3]

In the procedural context of this case, it would be premature for us to determine the merits of plaintiffs' allegations that the present and contemplated funding levels of education in their school districts are inadequate to meet the constitutional standards established by the Court of Appeals in the CFE cases. "Only after discovery and the development of a factual record can this issue be fully evaluated and resolved" (*Campaign for Fiscal Equity v State of New York*, 86 NY2d at 317). As to whether plaintiffs' claims are ripe, the future event to which such claims relate—the implementation of Foundation Aid and the increases in funding encompassed therein—is controlled by defendant and is likely to occur (*compare Saratoga County Chamber of Commerce v Pataki*, 275 AD2d at 158). Furthermore, if plaintiffs are successful in proving the allegations in their complaint that such funding will not remedy an existing unconstitutional deprivation of the opportunity to obtain a sound ba-

---

**3.** Parenthetically, plaintiffs point out that the Governor's 2009-2010 Executive Budget effectively froze any increases established by Foundation Aid for the 2009-2010 and 2010-2011 school years and extended the phase-in period for the funding from four to eight years.

sic education, a judicial determination of their claims will have an immediate and practical effect on the rights and actions of the parties (*see New York Pub. Interest Research Group v Carey*, 42 NY2d at 531). Additionally, the hardship that may be suffered if we do not permit consideration of these claims to go forward cannot be said to be insignificant, remote or contingent (*see generally Matter of Jamaica Water Supply Co. v Public Serv. Commn. of State of N.Y.*, 152 AD2d 17, 20 [1989]). Thus, we conclude that the matter is justiciable. Construing the allegations liberally and "accord[ing] plaintiffs the benefit of all favorable inferences which may be drawn from their pleading, without expressing our opinion as to whether they can ultimately establish the truth of their allegations before the trier of fact" (*Campaign for Fiscal Equity v State of New York*, 86 NY2d at 318), we also conclude that the complaint states a cause of action sufficient to survive a motion to dismiss.

■ We likewise reject defendant's related contention that plaintiffs' claims are moot because the Legislature has now addressed the alleged deficiencies through the enactment of Foundation Aid. Although, as defendant argues, defendant may be able to demonstrate that the 2007 legislation will ameliorate the defects and discrepancies that plaintiffs allege exist, it is also possible, as indicated above, that plaintiffs will successfully demonstrate, based on available data, that even the planned increases in aid are not sufficient to enable the school districts to provide a constitutionally-guaranteed sound basic education (*compare Matter of Global Tel\*Link v State of N.Y. Dept. of Correctional Servs.*, 68 AD2d 1599, 1600-1601 [2009]). Inasmuch as plaintiffs' rights will be directly affected by a determination of their claims, such claims are not moot (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713 [1980]; *Winner v Cuomo*, 176 AD2d 60, 62-63 [1992]; *cf. Mallinckrodt v Barnes*, 272 AD2d 651, 652-653 [2000]). Accordingly, while we are cognizant of the need to act with restraint in reviewing state financing plans while providing redress for violations of rights under the NY Constitution (*see Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d at 28), in light of the determination of the Court of Appeals that students and parents may sue defendant over school funding (*see generally Campaign for Fiscal Equity v State of New York*, 86 NY2d 307 [1995], *supra*), we conclude that Supreme Court properly denied defendant's motion to dismiss the complaint and the case should proceed to a review of the merits (*see Hurrell-Harring v State of New York*, 15 NY3d 8, 20 [2010]).

To the extent not specifically addressed herein, we have considered defendant's remaining contentions and find them unavailing.

MERCURE, J.P., MALONE JR. and McCARTHY, JJ., concur.

Ordered that the order is affirmed, without costs.