Lynch, J.
(dissenting). We respectfully dissent. Initially, we agree with the majority that petitioner’s standing is limited to challenging those aspects of the regulations that impact him, but would expand that challenge to all of 15 NYCRR 136.5 (b) (3) (ii). A party has standing if he or she has “a legally cognizable interest that is or will be affected by the [administrative] determination” (Matter of Sun-Brite Car Wash v Board of Zon *123 ing & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987] [emphasis added]). Here, petitioner, who received a statutory penalty of a one-year revocation as a result of his conviction, commenced this combined CPLR article 78 proceeding and declaratory judgment action when respondent Commissioner of Motor Vehicles denied his application for relicensure and imposed a five-year stay (see 15 NYCRR 136.5 [b] [3] [11] ). At the time, he was directly impacted by the stay, but it was evident that he would only be eligible for an A2 restricted license, coupled with an ignition interlock device, during the next five years[1] (see 15 NYCRR 136.5 [b] [3] [ii]). This is clearly a situation where the future event, i.e., the application for a reissued license and the issuance of a restricted license under the regulation, were contemplated by the parties (see Hussein v State of New York, 81 AD3d 132, 135-136 [2011], affd 19 NY3d 899 [2012]). In our view, a challenge to the initial five-year stay necessarily implicates the Commissioner’s continuing regulatory authority and, thus, the regulation either stands or falls as a package.
Next, we also agree with the majority that the Legislature has given the Commissioner extremely broad authority to regulate the issuance of licenses following a statutory revocation (see Vehicle and Traffic Law §§ 215, 510 [5]; 1193 [2] [b] [12] ; [c] [1]). As provided by Vehicle and Traffic Law § 1193 (2) (c) (1), no new license shall be issued after a statutory revocation is imposed for an alcohol-related offense “except in the discretion of the [C]ommissioner” (emphasis added). That authority, however, must be tempered by the Commissioner’s administrative role because, “[h]owever facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of powers doctrine permits” (Boreali v Axelrod, 71 NY2d 1, 9 [1987]). In our view, the Commissioner exceeded the scope of her regulatory authority by adopting, as pertinent here, emergency regulations that mandate a five-year stay of the relicensure application of any person with three alcohol-related convictions during a 25-year look-back period (see 15 NYCRR 136.5 [b] [3]). The same holds true for the subsequent five-year *124 period during which the Commissioner has determined to allow, if at all, only an A2 restricted license, with an ignition interlock device (see 15 NYCRR 3.2 [c] [4]; 136.4 [b] [2]; 136.5 [b] [3]).
The Vehicle and Traffic Law establishes firm criminal penalties and license sanctions for alcohol- and drug-related offenses that reflect a balance between public safety and the hardship encountered in losing one’s driving privileges (see Vehicle and Traffic Law § 1193). Relevant here, a driver’s license must be revoked for a period of one year where the driver has at least one prior alcohol- or drug-related offense within a 10-year period (see Vehicle and Traffic Law § 1193 [2] [b] [3]). Even then, the statute grants the Commissioner the authority to terminate such revocation upon the completion of alcohol and drug rehabilitation (see Vehicle and Traffic Law § 1196 [5]).
The question presented here is whether the Commissioner usurped the legislative policy-making role by effectively yielding her statutory discretion to a regulation that prohibits and then restricts the reissuance of a license for a 10-year period. In our view, because the Commissioner “crossed the hazy line between administrative rule-making and legislative policy-making’ ” (Greater New York Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 610, quoting Boreali v Axelrod, 71 NY2d at 11), this question must be answered affirmatively. Upon consideration of the “coalescing circumstances” set forth by the majority (Boreali v Axelrod, 71 NY2d at 12-14; see Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 125 AD3d 105, 108 [2014], lv denied 25 NY3d 963 [2015]), as to the first two factors, we agree that the regulations are generally consistent with a strong legislative policy of promoting public safety by reducing alcohol-related driving incidents. In application, however, we find that regulation impermissibly requires the Commissioner to act contrary to her statutory authority. As set forth above, the statute grants the Commissioner discretion to reissue a license after a revocation period expires and even to terminate a one-year revocation once the driver meets certain conditions (see Vehicle and Traffic Law § 1196 [5]). In contrast, the Commissioner has enacted a “general policy” to refuse to reissue a license for an extended five-year period in all cases absent a showing “of unusual, extenuating and compelling circumstances” (15 NYCRR 136.5 [d]). This last qualifying phrase, in which the Commissioner has reserved *125 the option of waiving the stay, does not resolve the problem because, by definition, a five-year stay is the standard and not, of itself, a hardship. The waiver language speaks to an extreme scenario that frankly is difficult to define, but leaves intact a general stay policy. The net effect is predictable enforcement, without regard to the underlying circumstances. By imposing this regulatory limitation, it is our view that the agency “was ‘acting solely on its own ideas of sound public policy’ ” (Boreali v Axelrod, 71 NY2d at 12, quoting Matter of Picone v Commissioner of Licenses, 241 NY 157, 162 [1925] [brackets omitted]). It is telling that, under the challenged regulation, petitioner’s license has been effectively revoked for a six-year period (the initial one-year statutory revocation, plus the five-year regulatory stay). By comparison, had petitioner incurred the three alcohol-related offenses within a shorter, four-year period, statutorily his license would have been permanently revoked, subject to a mandatory waiver after five years (see Vehicle and Traffic Law § 1193 [2] [b] [12]). In effect, by virtue of the new regulation, petitioner has been subjected to a longer revocation than that statutorily imposed upon a recidivist driver with a temporally worse driving record. This consequence shows that the Commissioner has simply gone too far.
Establishing what is in effect a general bar to unrestricted relicensure for a 10-year period following a statutory revocation, the Commissioner did not “merely fill in the details of broad legislation” (Boreali v Axelrod, 71 NY2d at 13). Rather, she abdicated her statutory mandate to exercise her discretion in favor of a hard and fast rule, waivable only under extremely limited circumstances. In contrast, and with respect to the third Boreali factor, prior to the promulgation of this emergency rule, the Legislature considered but did not enact “Charlotte’s Law,” a bill that would have required harsher penalties for recidivist drivers (see 2011 NY Senate-Assembly Bill S6496, A8934b).[2] Correspondingly, the Legislature has since adopted what is known as “Vince’s law” to heighten the criminal consequences of a recidivist offender. Specifically, Ve *126 hide and Traffic Law § 1193 (1) (c) (ii-a) now provides that a driver with three Vehicle and Traffic Law § 1192 convictions within the preceding 15 years shall be guilty of a class D felony (see L 2014, ch 191, §§ 1, 2, 3 [eff Nov. 1, 2014]). By adopting a policy creating an automatic stay in all cases absent “unusual, extenuating and compelling circumstances,” the Commissioner has “impose [d] a solution of [her] own” to address the public safety issue created by recidivist drivers (Boreali v Axelrod, 71 NY2d at 13). Based on the foregoing, we would grant the petition to the extent that 15 NYCRR 136.5 (b) (3) should be declared null and void, and remit the matter to the Commissioner for further consideration of petitioner’s relicensure application.
Lahtinen and McCarthy, JJ., concur with Peters, P.J.; Lynch, J., dissents in a separate opinion in which Garry, J., concurs.
Ordered that the judgment is affirmed, without costs.

. In his brief, the Attorney General candidly acknowledges that “petitioner would likely be affected” by the A2 restricted license and ignition interlock device requirements. It is undisputed that petitioner has since received an A2 restricted license, subject to the use of an ignition interlock device under 15 NYCRR 136.5 (b) (3) (ii).

. Focused on recidivist drivers, the proposed legislation provided for a permanent revocation in an instance, as here, where a driver had three alcohol-related offenses in violation of Vehicle and Traffic Law § 1192, within an expanded 25-year look-back period. Contrary to petitioner’s argument, the challenged regulation does not mirror Charlotte’s Law. While the regulation does embrace the 25-year look-back period, it does not go so far as to mandate a permanent revocation. Charlotte’s Law did not advance beyond the legislative committee stage.