Rumsey, J.
 

 Appeal from an order of the Supreme Court (O’Connor, J.), entered September 22, 2016 in Albany County, upon a decision of the court in favor of defendant.
 

 Plaintiffs, parents of minor students in multiple small city school districts outside of New York City, commenced this declaratory judgment action in October 2008 seeking, among other things, declarations that defendant’s failure to appropriate sufficient funds to permit the school districts at issue to provide plaintiffs’ children with a sound basic education violated the Education Article of the NY Constitution (see NY Const, art XI, § 1). Plaintiffs also requested injunctive relief compelling defendant to establish and maintain an education aid system and funding levels sufficient to enable the districts to provide a meaningful opportunity for plaintiffs’ children to receive a sound basic education meeting the minimal standards established by the Court of Appeals (see generally Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14 [2006] [hereinafter CFE III]] Campaign for Fiscal Equity v State of New York, 100 NY2d 893 [2003] [hereinafter CFE II]; Campaign for Fiscal Equity v State of New York, 86 NY2d 307 [1995] [hereinafter CFE I] [hereinafter collectively referred to as the CFE cases]). Following joinder of issue, defendant moved to dismiss the complaint, pursuant to CPLR 3211, contending that plaintiffs’ claims were not ripe for review or, in the alternative, were moot in light of the additional funding anticipated to be provided by Foundation Aid.
 
 [1]
 
 Supreme Court (Devine, J.) denied defendant’s motion to dismiss and, upon appeal, we affirmed (Hussein v State of New York, 81 AD3d 132 [2011], affd 19 NY3d 899 [2012]).
 
 [2]
 
 Following service of amended pleadings, a nonjury trial ensued, at the conclusion of which Supreme Court (O’Connor, J.) dismissed the third amended complaint in its entirety. Plaintiffs now appeal.
 

 Analysis of plaintiffs’ claims that defendant has failed to meet its duty under the Education Article to provide the affected students with a sound basic education necessarily begins with a review of the principles established by the Court of Appeals in the CFE cases. The Education Article declares that “[t]he [L]egislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (NY Const, art XI, § 1). To that end, the Court of Appeals has held that the Education Article “ ‘requires [defendant] to offer all children the opportunity of a sound basic education. Such an education should consist of the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury’ (86 NY2d [at] 316 . . .). The sound basic education guaranteed by the [NY] Constitution requires [defendant] to afford students with the ‘opportunity for a meaningful high school education, one which prepares them to function productively as civic participants’ and ‘compete for jobs that enable them to support themselves’ (Campaign for Fiscal Equity v State of New York, 100 NY2d [at] 908, 906)” (Aristy-Farer v State of New York, 29 NY3d 501, 505 [2017]).
 

 To establish a violation of the Education Article, a plaintiff must “establish a causal link between the present funding system and any proven failure to provide a sound basic education to [the affected] school children” (Campaign for Fiscal Equity v State of New York, 86 NY2d at 318). This burden may be met by proof regarding the “ ‘inputs’ children receive— teaching, facilities and instrumentalities of learning — and their resulting ‘outputs,’ such as test results and graduation and dropout rates” (Campaign for Fiscal Equity v State of New York, 100 NY2d at 908), and, where inputs and outputs are both deficient, a causal link between the two, which may be established by showing that increased funding would provide better teachers, facilities and instrumentalities of learning that improve student performance (see id. at 919). With respect to causation, the Court of Appeals specifically rejected the argument that poor socioeconomic conditions excuse poor outputs or results (id. at 915, 920-921).
 

 As noted by the Court of Appeals, crafting an appropriate remedy for an established constitutional violation is a particularly complex and vexing issue that implicates fundamental separation of powers concerns (id. at 925). To that end, although the Judiciary must “defer to the Legislature in matters of policymaking, particularly in a matter so vital as education financing,” it must perform its duty “to define, and safeguard, rights provided by the [NY] Constitution” (id.). In balancing those concerns, the Court of Appeals instructed in CFE II “that the funding level necessary to provide [New York] City students with the opportunity for a sound basic education is an ascertainable starting point [and that] [o]nce the necessary funding level is determined, the question will be whether the inputs and outputs improve to a constitutionally acceptable level” (id. at 930). Defendant was directed to “ascertain the actual cost of providing a sound basic education in New York City” and to enact “[r]eforms to the current system of financing school funding and managing schools [that] address the shortcomings of the current system by ensuring, as a part of that process, that every school in New York City would have the resources necessary for providing the opportunity for a sound basic education” (id.). The Court of Appeals further directed that defendant “ensure a system of accountability to measure whether the reforms actually provide the opportunity for a sound basic education” (id.).
 

 In CFE III, the Court of Appeals considered the adequacy of the remedy proposed in response to the directives of CFE II. Based on its review of the methodology utilized, the Court held that defendant’s conclusion that an additional $1.93 billion of annual aid for the New York City schools at issue in the CFE cases was necessary to provide students attending those schools with a sound basic education was reasonable and deserving of deference from the Judiciary (see Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d at 21-22, 30-31).
 
 [3]
 

 In response to the CFE cases, Foundation Aid was enacted to increase school aid funding on a statewide basis by approximately $5.5 billion annually when fully implemented over a four-year period. Foundation Aid was distributed as originally planned in the 2007-2008 and 2008-2009 budget years; however, aid to education was reduced in the 2009-2010 budget in response to the “largest budget gap ever faced by the State,” which was caused by the global financial crisis (New York State Division of Budget, 2009-10 Enacted Budget Financial Plan, https://www.budget.ny.gov/pubs/archive/fy0910archive/ enacted0910/2009-10EnactedBudget-FINAL.pdf at 4 [accessed Oct. 6, 2017]).
 
 [4]
 
 Specifically, Foundation Aid was frozen at then-existing levels and the phase-in period was extended from four years to seven years. In addition, the 2010-2011 state budget introduced a “[g]ap [elimination [adjustment” (hereinafter GEA), which reduced formula-based school aid by $1.4 billion in that budget year (New York State Division of Budget, 2010-11 Enacted Budget Financial Plan, https:// www.budget.ny.gov/pubs/archive/fyl011archive/enactedl011/ 2010-llFinancialPlanReport.pdf at 80 [accessed Oct. 6, 2017]). The GEA was continued in the 2011-2012 through 2015-2016 budgets, but was not continued in the 2016-2017 or 2017-2018 budgets (see New York State Division of Budget, FY 2017 Enacted Budget Financial Plan, https://www.budget.ny.gov/ pubs/archive/fyl7archive/enactedfyl7/FY2017FP.pdf at 90 [accessed Oct. 6, 2017]; New York State Division of Budget, FY 2018 Enacted Budget Financial Plan, https:// www.budget.ny.gov/pubs/archive/fyl8archive/enactedfyl8/ FY2018EnactedFP.pdf at 97-99 [accessed Oct. 6, 2017]).
 

 This action was commenced in 2008, after the initial enactment of Foundation Aid and prior to the introduction of the GEA. In affirming the denial of defendant’s motion to dismiss, we held that plaintiffs had stated a claim that the affected children were being denied a sound basic education based on detailed allegations that the districts where they attended school were substantially underfunded and would remain so even when Foundation Aid was fully implemented (Hussein v State of New York, 81 AD3d at 132). Thereafter, the complaint was amended to, among other things, reflect changes to the implementation of Foundation Aid and the introduction of the GEA.
 

 At trial, plaintiffs and defendant presented extensive evidence regarding each of the CFE II factors, namely, inputs, outputs and causation, and Supreme Court denied defendant’s motion to dismiss at the close of plaintiffs’ case, finding that plaintiffs had submitted sufficient evidence to establish prima facie violations in accordance with the CFE II standards. Ultimately, however, the court dismissed the third amended complaint, concluding that plaintiffs failed to prove that defendant did not meet its constitutional obligation to provide plaintiffs’ children with the opportunity for sound basic education. In reaching this conclusion, the court expressly found that consideration of the CFE II factors was not required in “the post-CFE environment” (56 Misc 3d 295, 304 [2016]). Supreme Court both mischaracterized the nature of plaintiffs’ claims and erred in concluding — without either reference to the CFE II factors or making specific findings of fact on this point — that the level of funding actually provided by defendant was constitutionally adequate because it exceeded the amount proposed by then Governor Pataki in 2006 in accordance with the methodology that the Court of Appeals held met constitutional standards with respect to New York City schools in CFE III.
 

 Although a claim based solely upon the allegation that Foundation Aid was reduced is insufficient to state a cause of action for violation of the Education Article (see Aristy-Farer v State of New York, 29 NY3d at 513-514), plaintiffs did more than simply put forth that conclusory assertion. Plaintiffs’ causes of action — grounded in the assertion that the actual funding levels provided following the CFE cases were insufficient to provide the affected students with a sound basic education — were based on detailed, district-specific allegations of insufficient inputs, deficient outputs and causation. More to the point, plaintiffs’ proof at trial, which Supreme Court acknowledged established a prima facie case that defendant failed to fulfill its constitutional obligation, was more than sufficient to require analysis under the CFE II framework on a district-by-district basis (see Aristy-Farer v State of New York, 29 NY3d at 509-512; New York Civ. Liberties Union v State of New York, 4 NY3d 175, 181-182 [2005]; Brown v State of New York, 144 AD3d 88, 95 [2016]). Indeed, by noting that changes in educational funding provided by defendant must still “deliver on its obligation to ensure that schoolchildren are provided the opportunity for a sound basic education” (56 Misc 3d at 305), the court acknowledged that any reductions in funding must pass constitutional muster, which is an inquiry that can be answered only through CFE II analysis.
 

 Thus, Supreme Court erred by proceeding directly to the “remedy” stage set forth in CFE III and affording deference to the Legislature without first applying the framework established in CFE II to determine whether plaintiffs had established a constitutional violation. No deference is due the Legislature when applying the CFE II factors to determine whether there is a violation in the first instance. Rather, courts must consider whether the evidence of inputs, outputs and causation establish that defendant has failed to provide constitutionally sufficient funding. It is only in adjudicating the sufficiency of the remedy for an established violation that deference to the political branches is required (see Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d at 28-30; Campaign for Fiscal Equity v State of New York, 100 NY2d at 925).
 
 [5]
 

 As a consequence of Supreme Court’s failure to make the factual findings regarding the CFE II factors, we must consider whether to remit this matter for that purpose or to review the record and make our own findings of fact and enter judgment accordingly. In a nonjury case where the evidence is sufficient as a matter of law to support a dispositive determination, this Court has the power “to grant the judgment which upon the evidence should have been granted by the trial court” (Orange & Rockland Utils. v Philwold Estates, 70 AD2d 338, 343 [1979], mod 52 NY2d 253 [1981]; see Nationstar Mtge., LLC v Davidson, 116 AD3d 1294, 1295 [2014], lv denied 24 NY3d 905 [2014]; Weckstein v Breitbart, 111 AD2d 6, 8 [1985]; Brooks v State of New York, 68 AD2d 943, 944 [1979]; Shipman v Words of Power Missionary Enters., 54 AD2d 1052, 1053 [1976]). However, that authority should not be exercised where the record is voluminous, complex issues are left unaddressed, and unresolved or issues of credibility are implicated; rather, in such cases, remit-tal to the trial court is necessary for the purpose of making the requisite findings of fact in order to permit intelligent appellate review (see For the People Theatres of N.Y. Inc. v City of New York, 84 AD3d 48, 59-60 [2011]; Gore v Cambareri, 303 AD2d 551, 553 [2003]; Matter of CNG Transmission Corp. [Green], 273 AD2d 726, 728-729 [2000]; Matter of Iroquois Gas Transmission Sys., 226 AD2d 808, 809 [1996]; Tri-State Sol-Aire Corp. v United States Fid. & Guar. Co., 198 AD2d 494, 495 [1993]; see also Weckstein v Breitbart, 111 AD2d at 8).
 

 Each of the factors making remittal appropriate is present in this case. The record is extensive. The trial was conducted over a two-month period, generating a record consisting of more than 5,000 pages of transcribed testimony, 356 exhibits totaling more than 50,000 pages and a posttrial statement of some undisputed facts. The determinative issues were entirely unaddressed and remain unresolved, there having been no disposi-tive analysis as required by CFE II. Although Supreme Court found that the performance of the children attending the school districts at issue was “undeniably inadequate” and “not acceptable” (56 Misc 3d at 299, 307) — a point conceded by defendant — it made no findings of fact with respect to the adequacy of the inputs or causation.
 

 Although there is significant data in the record — including the stipulated facts regarding student enrollments and demographic characteristics, staffing counts and ratios, class sizes and per pupil expenditures — expert testimony is required to resolve the determinative issues of inputs and causation, and the parties adduced extensive expert testimony on these issues. Plaintiffs called five expert witnesses and elicited opinions from additional witnesses, while defendant called nine expert witnesses. In summary, plaintiffs’ witnesses asserted that the school districts at issue lack the financial resources necessary to provide the services required to effectively educate the high-need student populations each serves — for example, smaller class sizes, additional social workers, academic intervention services, language services and extended learning opportunities — and that additional funds that would enable the school districts to provide such services would improve results. By contrast, defendant’s expert witnesses opined that each of the affected school districts was provided with sufficient resources to provide a sound basic education to their respective students, that the unsatisfactory results, or outputs, resulted from suboptimal use of the available resources and that additional funding would improve outputs only if properly applied. Thus, determination of the adequacy of the inputs and causation turns largely on resolution of sharply competing expert opinion testimony, which, in turn, implicates the credibility of the numerous witnesses who testified and the weight to be afforded to such testimony — all matters that require consideration in the first instance by the trial court. In that regard, it must be noted that Supreme Court made no findings of fact from which we could infer that it made any evaluation of the credibility of the numerous experts who testified.
 

 The enormity of this undertaking is illustrated by the need to make the required determinations separately for each of the eight school districts at issue, which varied in significant respects, such as the needs of their respective student populations, the level of local funding each received and the services each provided to students. Accordingly, we remit this matter to Supreme Court for a decision setting forth its findings of fact with respect to inputs and causation for each of the school districts at issue and for entry of a declaratory judgment on each of the relevant causes of action asserted in the third amended complaint.
 

 On remittal, Supreme Court must weigh the adequacy of the inputs — on a district-by-district basis — by considering the quality of teaching instruction, the adequacy of school facilities and classrooms and the availability of appropriate “instrumentalities of learning,” including classroom supplies, textbooks, libraries and computers (Campaign for Fiscal Equity v State of New York, 100 NY2d at 908-914). When evaluating the quality of teaching instruction, consideration should be given to whether class sizes must be reduced and whether additional supplemental services — for example, academic intervention services, language services, extended learning opportunities or additional social workers — must be provided to enable students in each of the districts to attain a sound basic education (see Aristy-Farer v State of New York, 29 NY3d at 514-515; Campaign for Fiscal Equity v State of New York, 100 NY2d at 915). For any district where the court finds that inputs were insufficient, it must determine — on a district-by-district basis— whether plaintiffs have established causation by showing that increased funding can provide inputs that yield better student performance (see Campaign for Fiscal Equity v State of New York, 100 NY2d at 919).
 

 We have considered the parties’ remaining arguments and find that they have been rendered academic or lack merit.
 

 McCarthy, J.P., Garry, Clark and Mulvey, JJ., concur.
 

 Ordered that the order is reversed, on the law, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision.
 

 [1]
 

 . Following CFE III, defendant enacted the Budget and Reform Act of 2007 (codified at Education Law § 3602) to increase funding to schools on a statewide basis, including a program, Foundation Aid, that established a new formula for calculating state aid to school districts (see Aristy-Farer v State of New York, 29 NY3d 501, 508 [2017]).
 

 [2]
 

 . This action was originally commenced on behalf of students in 11 school districts; however, several plaintiffs, including the original named plaintiff, subsequently withdrew, leaving claims asserted on behalf of students in eight school districts, and the caption was amended accordingly.
 

 [3]
 

 . The proposal that originated with then Governor Pataki would have increased funding on a statewide basis by $2.5 billion annually, including the $1.93 billion in additional aid intended for New York City schools. The Court of Appeals did not consider the adequacy of the funding proposed for schools outside of New York City, which were not at issue in the CFE cases.
 

 [4]
 

 . We may take judicial notice of information contained in summaries of enacted state budgets published on an official government website (see Matter of LaSonde v Seabrook, 89 AD3d 132, 137 n 8 [2011], lv denied 18 NY3d 911 [2012]; Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13, 19-20 [2009]).
 

 [5]
 

 . Supreme Court further erred by dismissing the third amended complaint without issuing a declaration in this declaratory judgment action (see Matter of Homestead Funding Corp. v State of N.Y. Banking Dept., 95 AD3d 1410, 1411 n 3 [2012]; Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am., 73 AD3d 1257, 1262 [2010], lv denied 15 NY3d 715 [2010]; McCarthy v Nova Cas. Co., 239 AD2d 851, 852 [1997], lv denied 90 NY2d 807 [1997]).