*505 OPINION OF THE COURT
Wilson, J.
Since 1894, the New York State Constitution has mandated that “[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (art XI, § 1). This Court gave contours to that right in a trilogy known as the “Campaign for Fiscal Equity” or “CFE” litigation. In Campaign for Fiscal Equity v State of New York, we held that our State Constitution[1] “requires the State to offer all children the opportunity of a sound basic education. Such an education should consist of the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury” (86 NY2d 307, 316 [1995] [CFE I] [citation omitted]). The sound basic education guaranteed by the Constitution requires the State to afford students with the “opportunity for a meaningful high school education, one which prepares them to function productively as civic participants” and “compete for jobs that enable them to support themselves” (Campaign for Fiscal Equity v State of New York, 100 NY2d 893, 908, 906 [2003] [CFE II]).
Our CFE decisions establish that there is “a constitutional floor with respect to educational adequacy . . . [and the courts] *506 are responsible for adjudicating the nature of [the] duty [to provide a sound basic education]” (CFE I, 86 NY2d at 315). The Education Article does not guarantee “that all educational facilities and services would be equal throughout the State” (Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 47-48 [1982]). Instead, it requires “a State-wide system assuring minimal acceptable facilities and services” (id. at 47). “[U]nevenness of educational opportunity d[oes] not render the school financing system constitutionally infirm, unless it c[an] be shown that the system’s funding inequities resulted in the deprivation of a sound basic education” (CFE I, 86 NY2d at 315). The Education Article does not guarantee any particular level or amount of state funding, but rather it guarantees students the opportunity to achieve a basic level of education.
The two actions presently before us require us to determine whether the claimed violations of the Education Article have been sufficiently pleaded. Defendants in both cases, collectively, are the State of New York, the Governor, the Board of Regents, and the President of the University of the State of New York and Commissioner of Education. Plaintiffs in the NYSER action are individual parents of children in a number of school districts, led by New Yorkers for Students’ Educational Rights (NYSER), an educational advocacy group. Plaintiffs in the Aristy-Farer action are primarily parents of New York City schoolchildren who seek to assert claims on behalf of all similarly situated parents and children. All plaintiffs contend that the State has violated the Education Article by failing to provide students with a sound basic education.
Supreme Court denied defendants’ CPLR 3211 motions to dismiss plaintiffs’ respective complaints.[2] Upon defendants’ appeal, in one order, the Appellate Division modified both Supreme Court orders and, as so modified, affirmed (143 AD3d 101, 120 [1st Dept 2016]). In the NYSER action, the Appellate Division modified to dismiss plaintiffs’ third cause of action “except insofar as it challenges the adequacy of defendant State’s education funding accountability mechanisms” and otherwise affirmed (id.). In the Aristy-Farer action, the Appellate Division modified to dismiss the second and third causes of *507 action, leaving only the first cause of action pending.[3] The Appellate Division granted defendants in both actions leave to appeal to this Court, to answer the certified question: “Was the order of the Supreme Court, as modified by [the Appellate Division], properly made?”
We now hold that the NYSER plaintiffs’ first and second causes of action do not survive a motion to dismiss. With respect to the third cause of action, defendants challenge it, as modified by the Appellate Division, only insofar as it concerns school districts other than New York City and Syracuse. As a result, the third cause of action survives as to New York City and Syracuse. The fourth cause of action, generally alleging an Education Article violation, is sufficiently pleaded as to New York City and Syracuse only, and also survives defendants’ motion to dismiss. The Aristy-Farer plaintiffs do not challenge the Appellate Division’s dismissal of their second and third causes of action, and we conclude that their remaining cause of action should also be dismissed.
I.
We briefly summarize the CFE litigation to provide context. In CFE I, we held that the plaintiffs adequately pleaded that the State had failed to provide New York City students with a sound basic education. We noted that for those plaintiffs to prove their case, they would “have to establish a causal link between the present funding system and any proven failure to provide a sound basic education to New York City school children” (CFE I, 86 NY2d at 318), and later explained the proof should include deficient “inputs” and “outputs” (CFE II, 100 NY2d at 908-909). In CFE II, we upheld the trial court’s finding that the State had failed to fund New York City schools adequately to provide a sound basic education, and we directed the State to “ascertain the actual cost of providing a sound basic education in New York City” (id. at 930). In CFE III, we rejected the lower courts’ determinations that the State had understated the cost of providing a sound basic education in New York City (see Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 30 [2006] [CFE III]).
Instead, we held that the obligation to determine the amount and allocation of funds was a peculiarly legislative function, *508 and the State had proffered sufficient evidence to justify its estimate as rational. “Accordingly, we declare [d] that the constitutionally required funding for the New York City School District include [d] additional operating funds in the amount of $1.93 billion” (id. at 31). In so concluding, we emphasized our deference to the legislature in areas of education policymaking, budget, and finance. Our decision in CFE III terminated that litigation; no injunctive relief survives that terminatiom
II.
The NYSER plaintiffs allege that, in 2007, following our CFE III decision, the State adopted various programs to increase funding not only for New York City schools, as our mandate required, but statewide. They allege that the State accomplished this through the Budget and Reform Act of 2007 (codified at Education Law § 3602), which included a program, Foundation Aid, that established a new formula for calculating state aid to school districts. However, according to the NYSER complaint, after the 2008 recession, the State froze education spending levels, and later, reduced them. Both the NYSER and Aristy-Farer plaintiffs allege that, in 2010, the State enacted “Annual Professional Performance Review” (APPR) legislation, which required the State to withhold education aid to any district that did not implement a plan to assess the performance of teachers and administrators. The State enacted the APPR legislation to receive funds under the federal “Race to the Top” program. After New York City failed to comply in 2012, the State withheld funds. Those allegations form the core of the current lawsuits.
Plaintiffs in both actions contend that the State has violated the Education Article by failing to fund public schools adequately, but the causes of action differ with regard to the allegations in support thereof.[4] Specifically, the NYSER complaint contains four causes of action. First, it alleges that defendants failed to comply with our CFE decisions by depriving the New York City school district of the “minimum constitutional level of funding.” Second, the complaint alleges that students in school districts throughout the state are being deprived of a sound basic education due to defendants’ failure to implement the Budget and Reform Act of 2007, and their implementation *509 of various budget-cutting measures. Third, the complaint alleges that defendants violated the Education Article by, among other things, failing to: identify essential courses of study, develop cost-efficient policies, undertake cost studies to determine the cost of a sound basic education, and ensure an adequate accountability system for measuring education performance. Fourth, and finally, the complaint alleges that defendants have failed to provide students across the state with a sound basic education in violation of the Education Article.
The Aristy-Farer plaintiffs focus on the State’s adoption of the APPR system, and allege that the State withheld approximately $290 million from the New York City school district. They assert three causes of action, alleging that: first, the State’s withholding of the $290 million denied New York City schools funding necessary for the provision of a sound basic education; second, the State’s failure to induce school boards and unions to agree to an APPR plan through mechanisms other than by withholding funds was arbitrary, unreasonable, and violated their due process rights; and third, the withholding of funds denied them equal protection.
III.
In considering the sufficiency of a pleading subject to a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), our well-settled task is to determine whether, ‘accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated’ ” (CFE I, 86 NY2d at 318, quoting People v New York City Tr. Auth., 59 NY2d 343, 348 [1983]). Plaintiffs here are entitled to all favorable inferences that can be drawn from their pleadings Csee id.). Thus, “[i]f we determine that plaintiffs are entitled to relief on any reasonable view of the facts stated, our inquiry is complete and we must declare the complaint legally sufficient” (id.).
IV.
Before turning to the specific claims in each complaint, we address the NYSER plaintiffs’ contention that they can allege statewide violations of the Education Article based on claimed funding deficiencies without including district-by-district facts in their pleadings. Our prior Education Article cases have clearly and consistently stated that the type of claims brought *510 here must be pleaded with district specificity to be viable.[5] In Levittown, we explained that absent allegations of “gross and glaring inadequacy,” decisions regarding the allocation of public funds for education fall within the purview of the legislature, not the courts (57 NY2d at 48-49).
In Reform Educ. Fin. Inequities Today (R.E.F.I.T) v Cuomo, decided the same day as CFE I, we held that because the plaintiffs did not claim specifically that students in their district were receiving less than a sound basic education, but instead attacked the gross inequality of funds available to school districts around the state, their pleadings could not survive a motion to dismiss (86 NY2d 279, 285 [1995] [“Giving plaintiffs’ submissions the benefit of every favorable inference, they simply do not state a claim that these disparities have caused students in the poorer districts to receive less than a sound basic education, which is all that they are guaranteed by our Constitution”]). Likewise, in Paynter v State of New York, decided the same day as CFE II, we upheld the dismissal of the plaintiffs’ complaint for failure to state a cause of action under the Education Article. Although the plaintiffs sufficiently pleaded “that by every measure of student achievement [their] schools do not deliver a sound basic education,” we found their complaint deficient because they had not “allege [d] that the substandard academic performance in their schools stem[med] from any lack of funds or inadequacy in the teaching, facilities or instrumentalities of learning” (100 NY2d 434, 438-439 [2003]).
More recently, in New York Civ. Liberties Union v State of New York, we rejected plaintiffs’ claims premised on failures in individual schools, noting the importance of pleading specific “district-wide” failures caused by inadequate state funding (see 4 NY3d 175, 178, 181 [2005] [NYCLU]). In NYCLU, we held that although the complaint alleged that “[t]he State of New *511 York does not provide adequate financial resources to afford all students throughout the State the opportunity for a sound basic education . . . , even construing plaintiffs’ allegations liberally . . . the complaint fails to state a cognizable claim” (id. at 180 [internal quotation marks omitted]). “Thus, because school districts, not individual schools, are the local units responsible for receiving and using state funding, and the State is responsible for providing sufficient funding to school districts, a claim under the Education Article requires that a district-wide failure be pleaded” (id. at 182).
Here, plaintiffs ask us to find that they have stated a claim in “another way,” because “[d]istrict-based claims of inadequate inputs and outputs are one, but, as this case shows, cannot be the only, way to plead an Education Article violation” (brief for plaintiffs-respondents at 3). Although our CFE and other Education Article decisions do not “delineate the contours of all possible Education Article claims” (Paynter, 100 NY2d at 441), they evidence an important underlying proposition. Because public schools are funded through a mixture of state and local funds, and because “the Education Article enshrined in the Constitution a state-local partnership in which ‘people with a community of interest and a tradition of acting together to govern themselves’ make the ‘basic decisions on funding and operating their own schools’ ” (Paynter, 100 NY2d at 442, quoting Levittown, 57 NY2d at 46), it cannot ordinarily be inferred that deficiencies in funding or educational services in one school district are mirrored in another. Therefore, allegations of deficiencies in one, several, or many school districts would not ordinarily serve as sufficient allegations about others. Our CFE decisions can be understood as a way to bring a challenge under the Education Article even if the State’s system overall is designed to provide a sound basic education, but such challenges must be brought on a school district level. Plaintiffs must plead some facts as to each school district they claim falls below the constitutional minimum. Here, drawing every inference in favor of the NYSER plaintiffs, it is not possible to infer that all — or even most — school districts in the state fall below the constitutional floor, and plaintiffs concede that many school districts are not deficient.
The Appellate Division reasoned that the NYSER plaintiffs properly pleaded a statewide claim because “actionable deficits identified in one district will require modification of the formula, necessarily affecting calculation of funding for all *512 districts” (143 AD3d at 117). That observation, while perhaps true, provides no justification for allowing the NYSER plaintiffs to proceed with their third and fourth causes of action on a statewide basis.
The NYSER plaintiffs also argue that defendants have a "self-executing” constitutional obligation to comply with the Education Article, and that by requiring plaintiffs to plead facts on a district-by-district basis, we would shift the burden to prove a violation onto students. Of course, all members of the legislative and executive branches take an oath to uphold the constitutions of the United States and New York, and have a duty to discharge their responsibilities faithfully (see NY Const, art XIII, § 1). However, as with every such obligation, if a plaintiff claims a violation, it is up to that plaintiff to prove the violation. Moreover, in the CFE litigation, the plaintiffs sought a variety of forms of ongoing injunctive relief as part of the remedy for the constitutional violation. Although the trial court ordered, inter alia, that the legislature conduct costing-out studies every four years and determine the cost of constitutional compliance on a district-by-district basis statewide, we affirmed the Appellate Division’s vacatur of the former and rejected the imposition of the latter (see CFE III, 8 NY3d at 32). Thus, the very “duty” we rejected in CFE III is the foundation of plaintiffs’ argument that they should be excused from pleading specific deficiencies and causation as to each district in which they alleged defendants have failed to provide a sound basic education.
Plaintiffs contend that requiring proof on a district-by-district basis could be difficult, if not impossible, and therefore reason they should be able to prove a statewide violation by adducing evidence as to some districts of their choosing. However, our precedent requires district-specific pleading for claims of this nature, which plaintiffs here have set forth for New York City and Syracuse only.
V.
We now turn to the specific allegations and individual causes of action in each pleading.
A. The NYSER Complaint
The NYSER plaintiffs’ first cause of action seeks to hold defendants liable because they allegedly “have failed to comply with the specific decisions and orders of the Court of Appeals *513 in CFE I, CFE II, and CFE III” However, that litigation is concluded. Our CFE decisions do not presently impose any injunctive remedy on defendants. In CFE II, we directed the State to ascertain costs and ensure a system of accountability, struck the lower courts’ other remedial orders, and limited our order to New York City schools. In CFE III, we repeatedly stated that the $1.93 billion estimate proffered by the State satisfied our mandate in CFE II. We noted that the State was not “limited to the minimum, or ‘floor,’ of what it takes to provide a sound basic education” (CFE III, 8 NY3d at 33 [Rosenblatt, J., concurring]). But we in no way imposed any further funding requirements on the State. We recognized in CFE III, and reiterate here, that “[w]e cannot ‘intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches’ ” (CFE III, 8 NY3d at 28, quoting Klostermann v Cuomo, 61 NY2d 525, 541 [1984]). Our deference “is especially necessary where it is the State’s budget plan that is being questioned” (id.).
In CFE III, we expressly “rejected] as unnecessary” the Appellate Division’s multi-year funding directive (CFE III, 8 NY3d at 27). Likewise, we did not, as the Appellate Division mistakenly concluded, direct that the State must increase its spending annually by a “built-in provision for annual updating for inflation by reference to a specified inflation index” (143 AD3d at 114). Thus, the NYSER plaintiffs’ second cause of action, based upon the State’s alleged violation for failing to comply with its own 2007 proposed funding, which exceeded the $1.93 billion we approved in CFE III, must also be dismissed.
Although our CFE decisions may well be valuable to the NYSER plaintiffs in framing their case as they proceed, they cannot state a claim based on noncompliance with orders arising from the CFE litigation, because that litigation has ended. The NYSER plaintiffs cannot state a claim for violation of the Education Article by pleading that state funding levels are not as great as they would have been under methods of calculation proposed by the State during the CFE litigation, or contemplated by the Budget and Reform Act of 2007, because those allegations do not state a constitutional violation, even though those facts may be relevant to support the NYSER plaintiffs’ *514 fourth cause of action.[6] Furthermore, even if some injunctive provision of the CFE litigation remained, the parties to that lawsuit — not this one — would need to move for contempt in the original proceeding. To sustain a motion for contempt, “a lawful judicial order expressing an unequivocal mandate must have been in effect and disobeyed. Moreover, the party to be held in contempt must have had knowledge of the order . . . [and] prejudice to the rights of a party to the litigation must be demonstrated” (McCain v Dinkins, 84 NY2d 216, 226 [1994] [citations omitted]).
As to the NYSER plaintiffs’ third cause of action, the State does not appeal that portion of the Appellate Division’s decision permitting that claim to proceed, as modified, for the New York City and Syracuse school districts. Thus, we do not decide whether the third cause of action, limited to allegations of a lack of accountability mechanisms, is a proper independent cause of action.
In their fourth cause of action, plaintiffs generally allege that the State defendants “have failed and are continuing to fail to provide ... an opportunity for a sound basic education in violation of” the Education Article. As we have held, “[a]n Education Article claim . . . requires a clear articulation of the asserted failings of the State, sufficient for the State to know what it will be expected to do should the plaintiffs prevail” CNYCLU, 4 NY3d at 180). The NYSER plaintiffs have sufficiently alleged deficient inputs and outputs with respect to New York City and, although in less detail, Syracuse, that give defendants adequate notice of what a potential remedy could require of them. In that regard, the NYSER complaint alleges deficient inputs (a lack of qualified teachers and principals, low levels of support staff, outdated curricula, unsuccessful English as a Second Language programs, overly large class sizes, *515 lack of basic materials such as textbooks and chalk, a reduction in after-school and summer programs, and inadequate and unclean buildings and facilities) with respect to Syracuse and New York City, with some degree of specificity. The complaint further alleges deficient outputs with respect to those school districts (poor standardized test proficiency, high failure and drop-out rates, poor English proficiency, and inability to meet basic requirements to gain admission to city or state colleges because their high schools do not offer basic course requirements).
The complaint also alleges a causal link between inadequate state funding and the failure of those two school districts to provide a sound basic education. Just as the CFE plaintiffs did, going forward, plaintiffs here will need to adduce evidence at trial proving, on the basis of current data, that the State has breached its constitutional obligation to provide a sound basic education to students in public schools. Should plaintiffs be successful, it will be up to the State to craft an appropriate response, subject to judicial review, because the courts have “neither the authority, nor the ability, nor the will, to micromanage education financing” (CFE II, 100 NY2d at 925).
In contrast, aside from New York City and Syracuse, the complaint alleges merely that other unspecified districts throughout the State have, on “average,” been forced to reduce instructional expenditures per student and have, as a result, experienced poor student performance. The very allegations the dissent quotes to illustrate the complaint’s purported sufficiency instead highlight its patent failure. The allegations that “school districts on average have reduced their instructional expenditures per pupil by approximately 7%”; that adequate “reserves” should be “5-10% of a school district’s spending levels,” but “in 2012-2013, 28 school districts had less than 1% of their budget available”; or that “87 school districts in New York State are currently in conditions of financial stress,” assert financial — not educational — problems (see Levittown, 57 NY2d at 47-48 [“If what is made available by this system (which is what is to be maintained and supported) may properly be said to constitute an education, the constitutional mandate is satisfied”]). The NYSER allegations do not allege a causal relationship between the unspecified educational deficiencies and a lack of state funding, or identify any specific districts, such that the State might be put on notice as to the relief sought (see CFE II, 100 NY2d at 928 [declining to order *516 any relief or state action as to districts other than New York City, because “(th)ere the case presented to us, and consequently the remedy, (was) limited to the adequacy of education financing for the New York City public schools, though the State may of course address statewide issues if it chooses”]).
Further general allegations that “high need school districts have been unable to comply with many state mandates and provide their students the opportunity for a sound basic education at the current funding levels,” though at least alleging an educational deficiency in conclusory terms, do not indicate what or how many “high-need” districts there are, the state mandates with which they have been unable to comply, or the causal link we have required to be pleaded. Certainly, as the dissent points out, “the factual allegations for New York City and Syracuse are more robust than for the remaining districts” — because the only school districts mentioned in the complaint other than those two are Buffalo, Rochester, and Yonkers, which are mentioned, e.g., because their residents do not “directly pay school taxes” and receive a subsidy less than the School Tax Relief Program (STAR) payments made to other districts, or to point out that Buffalo, Rochester and Yonkers are not among the 87 school districts determined to be “in conditions of financial stress” by the Comptroller.
B. The Aristy-Farer Complaint
The Aristy-Farer plaintiffs argue that the State’s withholding of approximately $290 million in 2012, as a penalty for New York City’s failure to comply with the APPR program, violated the Education Article. Their complaint focuses almost exclusively on that penalty, and contains conclusory statements alleging that New York City students do not receive a sound basic education. Those conclusory allegations are insufficient to state a claim. The Aristy-Farer complaint’s first cause of action is not viable because it does not contain any fact-specific allegations regarding deficient inputs or outputs in the New York City School District. The complaint does not identify any district-specific reduction in teaching or support staff, depletion of supplies, or inadequate learning facilities. Further, although the complaint makes a perfunctory reference to graduation rates and poor testing scores, it does not causally relate either of those allegations to input deficiencies caused by insufficient funding.
The Aristy-Farer complaint focuses on the State’s withholding of approximately $290 million in 2012 as a penalty for New *517 York City’s failure to comply with the APPR program. The Aristy-Farer plaintiffs contend that the State’s withholding violated the Education Article. However, as noted above, the Education Article does not mandate a particular dollar amount of state funding, and the complaint contains no allegation of causation linking the State’s one-time withholding of $290 million and any alleged failure to provide a sound basic education.
The Appellate Division held the first cause of action should proceed, not because it independently contains sufficient allegations, but because it “contains some of the same allegations as the much more detailed NYSER complaint regarding inputs and outputs . . . [and because the] actions involve the same nucleus of operative facts, have widely overlapping claims, and have been consolidated” (143 AD3d at 119-120). As the Appellate Division recognized, the Aristy-Farer complaint lacks the specificity of the NYSER complaint, and its remaining cause of action, even when read liberally, is too conclusory to survive a motion to dismiss (see generally Simkin v Blank, 19 NY3d 46, 52 [2012] [allegations consisting of bare legal conclusions are not entitled to be accepted as true on a motion to dismiss]).
The Aristy-Farer complaint’s first cause of action lacks sufficient factual “allegations that the State somehow fails in its obligation to provide minimally acceptable educational services [and therefore is] insufficient to state a cause of action under the Education Article” (Paynter, 100 NY2d at 441). “Fundamentally, an Education Article claim requires two elements: the deprivation of a sound basic education, and causes attributable to the State” (NYCLU, 4 NY3d at 178-179). The Aristy-Farer plaintiffs have failed to satisfy either of those requirements. A pleading is not an empty formality, and the Aristy-Farer plaintiffs chose to file a separate lawsuit with a separate theory and separate, but highly conclusory, allegations. That the NYSER and Aristy-Farer actions were consolidated on appeal to the Appellate Division does not relieve either set of plaintiffs of the legal obligation to plead with specificity, and the Aristy-Farer plaintiffs cannot rely on the NYSER allegations to support their separate pleading. Thus, the order of the Appellate Division permitting the Aristy-Farer plaintiffs to proceed with their first cause of action should be reversed.
*518 VI.
Conclusion
The Aristy-Farer plaintiffs have not stated any cognizable claims, and their complaint should be dismissed in its entirety. The NYSER plaintiffs’ first and second causes of action should be dismissed; their third cause of action, as modified by the Appellate Division, and fourth cause of action, should proceed as they relate to New York City and Syracuse only.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified in accordance with this opinion, without costs, and, as so modified, affirmed, and the certified question answered in the negative.

. Any reference to “the Constitution” herein refers to our New York State Constitution.

. We refer to the “complaints.” The operative pleading document in the NYSER action is their amended complaint; for the Aristy-Farer action, it is their second amended complaint.

. The Aristy-Farer plaintiffs do not cross-appeal the Appellate Division’s decision, thus, the dismissal of their second and third causes of action is not before us.

. As discussed above, the Appellate Division modified the NYSER plaintiffs’ third cause of action and dismissed the Aristy-Farer plaintiffs’ second and third causes of action.

. We do not foreclose the possibility that allegations sufficient to satisfy our CFE “gross educational inadequacies” test (CFE I, 86 NY2d at 319) could be made on a statewide basis. For example, if the State were to stop funding education after elementary school, or would not allow state monies to be spent on math education, a plaintiff might not need to allege district-by-district inputs and outputs to challenge such policies. Here, however, the NYSER plaintiffs do not allege the existence of any such statewide rule or policy, but instead contend that, in New York City, Syracuse, and various unspecified school districts around the state, students are not receiving a sound basic education. That claim requires fact-specific district-by-district allegations of the deprivation of a sound basic education (and later, proof).

. The dissent evidences a fundamental misunderstanding of our holding here, treating it as if it bars plaintiffs, in pursuing their surviving claim, from the use of facts relating to the prior CFE litigation and its aftermath, e.g., that “the State failed to carry out its commitment to provide the amount of state aid that the governor and the legislature had determined to be necessary,” or that the State “abandon[ed] those efforts.” Those facts may well be evidence in this case, but they themselves are neither a cause of action nor the basis for enforcement of nonexistent injunctive relief. Likewise, neither our decision today nor the CFE litigation prevents these plaintiffs — who are not the CFE plaintiffs — from obtaining different relief, including injunctive relief, if warranted based on the proof they adduce and the findings of the lower courts.