| |
|---|
| **Woo v City of New York** |
| 2025 NY Slip Op 30092(U) |
| January 8, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 161109/2022 |
| Judge: J. Machelle Sweeting |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK – CITY PART, PART 62

-------------------------------------------------------------x
                           :

LEDYA WOO,                      :

                           :      Index No. 161109/2022

             Plaintiff,     :

                           :      Motion Seq. No. 001

     -against-             :

                           :      **DECISION & ORDER ON**
                                     **MOTION**

THE CITY OF NEW YORK, LAVONDA WISE, :
Individually, and RAHUL SAHNI, Individually, :

                           :

            Defendants.    :

                           :

-------------------------------------------------------------x

**HON. J. MACHELLE SWEETING, J.S.C.:**

The City of New York (the "City"), Deputy Inspector Lavonda Wise ("Wise") and Lieutenant Rahul Sahni ("Sahni") (collectively referred to as "Defendants", submit a "Partial Motion to Dismiss the Complaint" (notice of motion [NYSCEF Doc No. 3]), seeking an order and judgment, pursuant to Civil Practice Law and Rules ("CPLR") Section 3211 (a) (7), "partially dismissing the complaint" (Complaint [NYSCEF Doc No. 1]) filed by Ledya Woo ("Plaintiff") for failure to state causes of action with respect to her claims for sex, gender, pregnancy, lactation, disability discrimination, hostile work environment and retaliation, in violation of her rights under New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL"). Plaintiff opposes and cross-moves for leave to amend the Complaint, pursuant to CPLR 3025 (b).

[* 1]

### Standards of Review

"In considering the sufficiency of a pleading subject to a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7), our well-settled task is to determine whether, accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated" (*Aristy-Farer v State of New York*, 29 NY3d 501, 509 [2017] [internal quotation marks and citations omitted]). "[T]he court is not concerned with determinations of fact or the likelihood of success on the merits" (*Detmer v Acampora*, 207 AD2d 477, 477 [2d Dept 1994], *citing Stukuls v State of New York*, 42 NY2d 272, 275 [1977]). "Plaintiffs [] are entitled to all favorable inferences that can be drawn from their pleadings" (*Aristy-Farer*, 29 NY3d at 509 [citation omitted]). "Thus, [i]f we determine that plaintiffs are entitled to relief on any reasonable view of the facts stated, our inquiry is complete and we must declare the complaint legally sufficient" (*id*. [internal quotation marks and citation omitted]).[1]

"In addition, employment discrimination cases are themselves generally reviewed under notice pleading standards" (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009]). "For example, under the Federal Rules of Civil Procedure, it has been held that a plaintiff alleging employment discrimination 'need not plead specific facts establishing a prima facie case of discrimination' but need only give 'fair notice' of the nature of the claim and its grounds" (*id. quoting Swierkiewicz v Sorema N.A.,* 534 US 506, 514–15 [2002] [alteration marks omitted]).

---

[1] On a motion to dismiss under CPLR 3211 (a) (7), "the court may not rely on facts alleged by defendants to defeat the claims unless the evidence demonstrates the absence of any significant dispute regarding those facts and completely negates the allegations against the moving defendants" (*Krause v Lancer & Loader Group, LLC*, 40 Misc 3d 385, 391 [Sup Ct, NY County 2013], *citing Lawrence v Graubard Miller*, 11 NY3d 588 [2008]).

[* 2]

With respect to Plaintiff's cross-motion, leave to amend under CPLR 3025 (b) "shall be freely given. . . absent prejudice or surprise to the opposing party" (*Favourite Ltd. v Cico*, 42 NY3d 250, 256 [2024] [citations omitted]), as long as the proposed amendments are not "palpably insufficient or clearly devoid of merit" (*Cruz v Brown*, 129 AD3d 455, 456 [1st Dept 2015 [internal quotation marks and citation omitted]). "The grant or denial of a motion to amend is reviewed for abuse of discretion" (*Favourite Ltd.*, 42 NY3d at 256 [citation omitted]).

**Plaintiff's Allegations**

Plaintiff avers that she joined the NYPD on July 13, 2016 (Complaint ¶ 8). In January 2017, after completing training, Plaintiff was assigned to a precinct in the Bronx and, in March 2018, she was reassigned to the 108th Precinct in Queens ("Precinct") (*id.* ¶¶ 9-10). She was initially assigned to the day tour, where she became friends with officer Jaswinder Kaur ("Kaur") (*id.* ¶¶ 13-14). In 2018, defendant Sahni became the Platoon Commander of the day tour (*id.* ¶ 15).

Plaintiff alleges that, shortly after Sahni's promotion to Platoon Commander, he began a "romantic relationship" with Kaur, which led to Sahni socializing with Kaur's friends, including Plaintiff (*id.* ¶¶ 16-17). Plaintiff further alleges that, in 2020, Sahni and Kaur, who was then assigned to work as Sahni's driver, were disciplined by Commanding Officer Michael Gibbs ("Gibbs") for misconduct committed while on duty, after being caught by an Integrity Control Officer in a hotel room, where they had been trysting for several hours (*id.* ¶¶ 18-19).

[* 3]

Following this discipline, Gibbs transferred Sahni to the Precinct's midnight tour (*id.* ¶ 20). Plaintiff contends that, despite "being on punishment" for on-duty misconduct, Sahni continued in "his cavlier [*sic*] ways" by going to a tavern where Plaintiff, Kaur, and other off-duty police officers socialized, and remained there for three hours while ostensibly working overtime for the Counter Terrorism Bureau (*id.* ¶¶ 21-23). Defendant Wise became Commanding Officer of the Precinct in December 2020 (*id.* ¶ 24). "[D]espite this dereliction of duty," Sahni was promoted to Administrative Lieutenant in May 2021 (*id.* ¶ 25).

After his promotion, Sahni told Plaintiff that he was "going to help her," and later called to inform her that he could get her out of "less popular details," but that she would owe him a drink for such favors (*id.* ¶¶ 26-27). Sahni also told her not to tell Kaur about their conversation, because "she would get mad" (*id.* ¶ 28). Plaintiff asserts that she was "creeped out" by Sahni's proposal that they "go out for a secret drink" without telling Kaur (*id.* ¶ 29).

Upon her return to the Precinct, Plaintiff told her husband, Police Officer Peter Woo, about what had occurred, and he, in turn, told a fellow officer about her rejection of Sahni's advances (*id.* ¶ 31). Plaintiff alleges that Sahni was angered when he learned that his conduct had been exposed (*id.*) and that, immediately thereafter, Sahni changed Plaintiff's assignments "drastically" to retaliate against her (*id.* ¶¶ 32-33), placing her in "punitive assignments. . . because she refused to get a drink with him" alone (*id.* ¶ 39).

Plaintiff alleges that she complained to her union about her "incessant adverse assignments, but no changes were made" (*id.* ¶ 40). She also alleges that, because of his rank, Sahni is a "mandated reporter," and so he was obligated to report complaints of discrimination to his superiors, even if the complaints were made against him, yet Sahni never filed such a complaint with the NYPD's Office of Equal Employment Opportunity (OEEO) (*id.* ¶¶ 41-44).

[* 4]

Plaintiff asserts that Sahni further retaliated against her by assigning her to details during her regular tour, despite Plaintiff being in an assigned sector, without first obtaining permission from her Bureau Chief, the Chief of Department, or the Police Commissioner (*id.* ¶¶ 45-46). As a result of these "punitive" details, Plaintiff was unable to work overtime details, which cost her thousands of dollars in lost overtime pay and pension benefits. Plaintiff asserts that assignment to these details also hindered her efforts to advance in the Department, noting that officers' prospects for promotion depend on the number of arrests they make and summonses they issue (*id.* ¶¶ 47-51). Plaintiff asserts that other officers in the Precinct who did not have to fend off uninvited sexual overtures and were not subject to retaliatory assignments fared much better than she, as they were given steady sector positions, vehicle assignments, and overtime (*id.* ¶ 52).

Plaintiff contends that the details to which she was assigned in retaliation not only gave her no chance to make arrests or issue summonses, but also deprived her of tours on patrol, further reducing her opportunities to make arrests and issue summonses. By purposely denying her the opportunity to reach arrest and summons thresholds, Sahni allegedly ensured that Plaintiff received negative evaluations, further impairing her advancement (*id.* ¶¶ 54-78).

Plaintiff further alleges that, after these setbacks, she filed sexual harassment and gender discrimination complaints against Sahni with the OEEO. Sahni and others in the Precinct soon learned about the complaints and Sahni continued retaliating against Plaintiff (*id.* ¶¶ 79-84).

Plaintiff asserts that, on one occasion, Sahni said to her, "I know what you are doing," in reference to her complaints, and that he then increased the number of her punitive assignments (*id.* ¶¶ 85-86). Following the OEEO investigation, Sahni was docked 18 days' pay "for stealing job time" by frequenting a bar while on the job but was not punished in any other way (*id.* ¶¶ 87, 89). The OEEO, however, deemed Plaintiff's claims of sexual harassment unsubstantiated and allowed

[* 5]

Sahni to remain as Administrative Lieutenant, in charge of scheduling at the Precinct, where he continued to cause Plaintiff harm (*id.* ¶¶ 88, 90).

Plaintiff became pregnant in August 2021, which resulted in her being placed on restricted duty and assigned to the telephone switchboard at the Precinct desk, despite her protesting to Sahni about this assignment (*id.* ¶¶ 92-98). As other officers in the Precinct had been allowed to work out of uniform during their pregnancies, Plaintiff assumed that she had the same option and so began coming to work out of uniform (*id.* ¶¶ 99-101). In November 2021, plaintiff came to work wearing leggings and sneakers, and was told by Lieutenant Bollar ("Bollar") that she was unfit for duty, ordered to go to the mall to buy a new suit and dark shoes, and directed to "take lost time" while away from the Precinct (*id.* ¶¶ 102-05). Plaintiff protested to Bollar that she could not be compelled to take lost time, prompting Bollar to enter Sahni's office, return, and reiterate his order to her to go to the mall (*id.* ¶¶ 106-07).

Plaintiff was transferred to NYPD's Medical Division at the end of November 2021 (*id.* ¶ 111). While still assigned to the Precinct, Plaintiff received a "command discipline" from Wise and Sahni for allegedly failing to process an arrest for 14 hours, even though Plaintiff followed procedure and processed the arrest (*id.* ¶¶ 112-13). Plaintiff asserts that this discipline was unfounded, as there is no NYPD policy that dictates the time in which an arrest must be processed (*id.* ¶ 114). As a result, Plaintiff was docked three days' pay (*id.* ¶ 116). She continued to work in the Medical Division until April 2022, when she went on maternity leave (*id.* ¶ 118).

Plaintiff returned to work on October 18, 2022, was approved for full duty by the Medical Division, and returned to the Precinct the next day (*id.* ¶¶ 120-21). Plaintiff faced problems immediately when she told her supervisors that she would need to pump milk for her infant during her shift at 11 a.m. and 3 p.m. (*id.* ¶¶ 122-23). First, she was told that she would have to pump at

Page **6** of **23**

[* 6]

2 p.m. (*id.* ¶ 124). Plaintiff then spoke with her supervising sergeant, who allowed her to pump at 3 p.m. (*id.* ¶¶ 125-27).

The following day, Sahni sought to assign Plaintiff to a detail outside the Precinct (*id.* ¶ 128). Plaintiff told Sahni that she could not work any details, as it would interfere with her pumping schedule, but Sahni insisted (*id.* ¶¶ 129-30). Plaintiff telephoned Sergeant Cornado ("Cornado") of the OEEO to complain about Sahni's conduct (*id.* ¶ 131). Cornado told her that she needed to make a request for an accommodation to allow her to express milk at work, and to have her supervising sergeant sign it (*id.* ¶ 132). Plaintiff applied for the accommodation in writing, which was signed by her supervising sergeant, and submitted to OEEO, which approved her request (*id.* ¶¶ 133-34). Cornado called Sahni to tell him about Plaintiff's accommodation, at which time Sahni allegedly asked Cornado "what he could do to Woo without getting in trouble?" (*id.* ¶¶ 135-36). Cornado told Plaintiff about his call with Sahni and suggested that she file additional complaints if he continued to harass her (*id.* ¶ 137).

After the accommodation approval, Plaintiff called the NYPD's Employment Assistance Unit ("EAU") to discuss Sahni's harassment and asserts she was told that Sahni "really had a lot of complaints" against him (*id.* ¶¶ 140-41). On the following day, October 20, her second day back at the Precinct, Plaintiff met with an EAU representative, who appointed a health and wellness counselor for her, with whom she met on October 25, 2022 (*id.* ¶¶ 142-43, 145).

At this meeting, the counselor commiserated with Plaintiff about her difficulties with Sahni and stated that EAU would help her (*id.* ¶ 146). Thereafter, EAU and OEEO made efforts to have Sahni transferred from the Precinct (*id.* ¶ 147). In a later meeting with OEEO, Plaintiff was offered three options for transfer within the NYPD, but she demurred, stating that, as she was the victim, she should not be forced to transfer (*id.* ¶¶ 148-50).

[* 7]

Plaintiff alleges that, on October 29, 2022, Sahni assigned Plaintiff overtime to disrupt her childcare plans for the end of her tour, in retaliation for her successful accommodation application (*id.* ¶¶ 152-53). Plaintiff also asserts that, by forcing her to work overtime after her shift without giving her prior notice of at least 24 hours, Sahni violated state law (*id.* ¶ 154).

Wise allegedly became angry when she heard that Plaintiff had complained about Sahni forcing her to work this overtime assignment and retaliated, beginning the next day, by repeatedly interfering with Plaintiff's breast pumping schedule and assigning her to another overtime post (*id.* ¶¶ 157-64). Plaintiff informed an Integrity Control Officer about Wise's interference with her accommodation who, in turn, telephoned OEEO to lodge a complaint on her behalf (*id.* ¶¶ 165-66).

This complaint triggered further retaliation from Wise, who telephoned NYPD's Psychological Services unit to assert that Plaintiff's fitness for duty needed to be evaluated because she was purportedly suffering from postpartum depression and posed a danger to herself and to others (*id.* ¶¶ 167-69). Plaintiff asserts that Wise's allegations about her fitness for duty were false, unjustified, and made "without even speaking with Plaintiff" (*id.* ¶¶ 170, 174).

Plaintiff further claims that making a referral to Psychological Services "is a common retaliatory tactic used against officers who [complain] about unlawful NYPD practices or. . . about discrimination within the Department" and was made in this instance to retaliate against her for complaining about Defendants' discrimination and harassment (*id.* ¶¶ 171-74). Psychological Services responded by having a psychiatrist conduct a telephonic interview with Plaintiff, which ended with the psychiatrist informing her that she had no mental health issues (*id.* ¶¶ 175-79). Despite her false accusations against Plaintiff, Wise was not disciplined in any way (*id.* ¶ 182).

[* 8]

Sahni was transferred out of the Precinct in Queens to the 67th Precinct in Brooklyn in November 2022 (*id.* ¶ 183). Despite Sahni's absence, Plaintiff alleges that Wise continued to retaliate against her, through the date of the filing of the Complaint, by denying her virtually all overtime, with the exception of punitive assignments (*id.* ¶¶ 184-88).

Starting at Paragraph 185 of the Complaint, Plaintiff asserts that Wise's continuing discriminatory retaliation against her deprives her of the ability to earn overtime, make arrests, and issue summonses, and this disparate treatment impedes her advancement in the NYPD. Plaintiff also provides the names of several similarly situated police officers in the Precinct, both male and female, who earn significantly more money in overtime and have received higher performance evaluations than she has. Plaintiff asserts that she has asked her supervising sergeant to place her back in a sector position in which she can make arrests but has been told that she cannot be assigned to such a position until Wise leaves the Precinct (*id.* ¶ 201).

Plaintiff claims that, in addition to the hostile work environment Defendants have created, the unsanitary accommodation they provided at the Precinct in which to express breast milk is not in compliance with the laws of the City or State of New York (*id.* ¶ 203). Plaintiff complains that, rather than providing her with a clean private space, Defendants forced her to express milk in a dirty storage closet (*id.* ¶¶ 204-05), failed to provide her a refrigerator in which to store her milk (*id.* ¶ 206) and failed to provide her access to clean water (*id.* ¶ 207).

The final instance of harassment raised in the Complaint relates to a report Plaintiff filed against Sahni in which plaintiff submitted a photo of Sahni and Kaur to NYPD's Internal Affairs Bureau ("IAB"), to refute Sahni's false assertions that he was not involved in a dating relationship with Kaur (*id.* ¶¶ 213-14). Based on Sahni's false statements, IAB determined that the allegations that Sahni engaged in improper fraternization with Kaur had not been substantiated (*id.* ¶ 215).

On December 20, 2022, Plaintiff was summoned to appear before the NYPD Inspections Unit to answer questions relating to the photo of Sahni and Kaur (*id.* ¶ 212). Plaintiff alleges that, at this interview, Raymond Salamone, "the financial secretary of the Police Benevolent Union," screamed at Plaintiff for initiating the complaint against Sahni (*id.* ¶ 216), and Plaintiff was forced to state that the punishment Sahni had received was sufficient (*id.* ¶ 217). Plaintiff was further informed that she would have to drop her complaint against Sahni if she wished the retaliation to stop and was further informed that the Inspections Unit has "the power to further retaliate against Plaintiff and they are not to be questioned" (*id.* ¶ 218).

The Complaint asserts thirteen causes of action against each of the Defendants: (1) sex and gender discrimination in violation New York State Executive Law Section 296 ("Exec Law § 296"); (2) sex, gender, and disability discrimination and hostile work environment under Exec Law § 296; (3) disability discrimination under Exec Law § 296; (4) retaliation under Exec Law § 296; (5) sex, pregnancy, and gender discrimination under City Administrative Code Section 8-107 ("Admin Code § 8-107"); (6) sex, pregnancy, gender, and disability discrimination and hostile work environment under Admin Code § 8-107; (7) disability discrimination under Admin Code § 8-107; (8) disability discrimination, failure to engage in cooperative dialogue under Admin Code § 8-107; (9) retaliation under Admin Code § 8-107; (10) strict liability for disability discrimination under Admin Code § 8-107 (13) (b); (11) strict liability for sex, pregnancy, and gender discrimination under Admin Code § 8-107 (13) (b); (12) strict liability for retaliation under NYC Admin Code § 8-107 (13) (b); and (13) imposition of liability for punitive damages, attorneys' fees, and costs for violation of Admin Code § 8-502 (a) and (f).

[* 10]

**Defendants' Motion**

**Disability Discrimination**

As defendants correctly argue, Plaintiff's SHRL and CHRL disability discrimination claims fail because Plaintiff does not allege that she has a disability as defined by those statutes. *See Krause v Lancer & Loader Group, LLC*, 40 Misc.3d 385, 397 (finding that a "normal" pregnancy, absent impairment, could not form the basis of a disability discrimination claim under SHRL or CHRL, but noting, as the Court of Appeals has stated in *Chauca v Abraham*, 30 NY3d 325, 330 n1 [2017] that "[d]iscrimination on the basis of pregnancy is a form of gender discrimination" (*Chauca v Abraham*, 30 NY3d 325, 330 n1 [2017]) citation omitted.

**Strict Liability under CHRL**

Admin Code § 107 (13) permits "[e]mployer liability for discriminatory conduct by employee, agent or independent contractor." Subsection (b) provides, in pertinent part:

> An **employer** shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:
>
> (1) The employee or agent exercised managerial or supervisory responsibility; or
>
> (2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>
> (3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

(emphasis added)

Under Admin Code § 107 (13) (b) (1), **employers** may be held strictly liable for unlawful discriminatory conduct committed by their employees, agents, or independent contractors where, as here, the offending employees "exercised managerial or supervisory responsibility." Here,

[* 11]

Plaintiff may seek to hold both Sahni and Wise directly (but not strictly) liable on her CHRL claims for their alleged discriminatory misconduct, but there is no basis to hold them strictly liable because neither of them were Plaintiff's "employer" within the meaning of Admin Code § 107 (13) (b). Accordingly, Defendants' motion to dismiss Plaintiff's eleventh and twelfth causes of action, seeking to impose strict liability as against Sahni and Wise is granted.[2]

### Sex Discrimination/Reasonable Accommodation for Lactation

Section 296 of New York State's Executive Law provides, in pertinent part:

1. It shall be an unlawful discriminatory practice:

(a) *For an employer. . ., because of an individual's. . . sex. . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment*.

. . .

(e) *For any employer. . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article*.

. . .

(h) *For an employer. . . to subject any individual to harassment because of an individual's. . . sex, . . . or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims*. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. . .

. . .

---

[2] In the tenth cause of action, Plaintiff seeks to impose strict liability against all Defendants based on disability discrimination. This cause of action is dismissed in its entirety based on this court's determination that Plaintiff failed to state a cause of action for disability discrimination. As set forth herein, the eleventh and twelfth causes of action for strict liability as against Sahni and Wise are dismissed, but the remaining causes of action for strict liability as against employer City remains.

[* 12]

> 3. (a) *It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known. . . pregnancy-related conditions, of an employee. . . in connection with a job or occupation sought or held or participation in a training program.*[3]

(emphasis added).

To plead a *prima facie* case of discrimination in employment, a "'plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to hold her position; (3) she was terminated from employment or suffered an adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination'" (*Hamburg v New York Univ. School of Medicine*, 155 AD3d 66, 73-74 [1st Dept 2017], *quoting Forrest v Jewish Guild for the Blind,* 3 NY3d 295, 305 [2004]).

Plaintiff is a woman, which makes her a member of a protected class (*see Williams, supra,* AD3d at 76-77 [1st Dept 2009] [describing effect of Local Civil Rights Restoration Act of 2005, which shifted focus from test that attached liability to "small subset of workplace actions that demean women or members of other protected classes" to eliminating "unwanted gender-based conduct," premised on "principle that discrimination violations are *per se* 'serious injuries'"] [citations omitted]).

As an experienced police officer, Plaintiff is qualified to hold her position (*see* Complaint ¶¶ 8-9 [joined NYPD in 2016 and, upon successful completion of training, assigned to work in January 2017], ¶ 120 [Plaintiff returned from maternity leave and approved to return to full duty

---

[3] Subsection 21-e of Executive Law § 292 defines "reasonable accommodation" to include "actions taken which permit an employee. . . with a . . . pregnancy-related condition to perform in a reasonable manner the activities involved in the job or occupation sought or held. . .."

Subsection 21-f defines "pregnancy-related condition" as a "medical condition related to pregnancy or childbirth that inhibits the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, including but not limited to lactation; provided, however, that in all provisions of this article dealing with employment, the term shall be limited to conditions which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held; and provided further, however, that pregnancy-related conditions shall be treated as temporary disabilities for the purposes of this article."

[* 13]

by NYPD Medical Division]).  Plaintiff has identified multiple adverse employment actions that Sahni and/or Wise have taken, to punish her for complaining about Sahni's unwelcome sexual advances (*see id.* ¶¶ 36, 45-49), which include refusing to allow Plaintiff to keep to her breast pumping schedule (*id.* ¶¶ 128-30, 157-64), forcing Plaintiff to work "punitive" overtime details, to interfere with her childcare arrangements (*id.* ¶¶ 152-53), and falsely referring Plaintiff to NYPD Psychological Services immediately after she complained about their interference with her pumping schedule (*id.* ¶¶ 157-68). These adverse employment actions are not only described as occurring either immediately or shortly after Plaintiff complained about her mistreatment, but were accompanied, in one instance, by an oral query Sahni allegedly made to OEEO after Plaintiff complained, asking what he could do to her "without getting into trouble" (*id.* ¶¶ 135-36), showing direct and indirect evidence of "retaliatory animus" on the part of Sahni and Wise (*Thomas v Mintz*, 60 Misc 3d 1218 [A], 2018 NY Slip Op 51169 [U], *5 [Sup Ct, NY County 2018], *aff'd as mod,* 182 AD3d 490 [1st Dept 2020], *citing, inter alia, Pace Univ. v New York State Commn. on Human Rights*, 85 NY2d 125, 129 [1995]).

Plaintiff has adequately pleaded causes of action for sexual discrimination under the SHRL and CHRL and so Defendants' motion to dismiss those claims is denied.


**Accommodation**

Defendants assert that Plaintiff's SHRL accommodation cause of action, and her CHRL lactation accommodation cause of action, fail because "Defendants provided her with an accommodation" and neither the SHRL nor the CHRL expressly require employers to provide employees with the ability to express milk every 3 hours, as Plaintiff alleges.

[* 14]

Plaintiff alleges that, on the day she returned to the Precinct from maternity leave, she told "the supervisors in the Command" that she needed to express milk at 11 a.m. and 3 p.m. each day while on duty (Complaint ¶¶ 121-22). The next day, Plaintiff formalized her request for this accommodation in writing, signed by her supervisor, and submitted the request to the NYPD's OEEO, which approved the request (*id.* ¶¶ 132-34).

Despite OEEO informing Sahni that the accommodation had been approved, Plaintiff asserts that the harassment still continued (*id.* ¶ 138). Specifically, Plaintiff alleges that Wise and Sahni denied her the benefit of her accommodation by repeatedly refusing to allow her to keep to the breast pumping schedule that she had told them she needed to maintain and by scheduling her for "punitive overtime" assignments "in order to disrupt her childcare plans" (*id.* ¶ 152). Plaintiff further alleges that, when she complained about this particular discriminatory misconduct, defendant Wise retaliated by reporting Plaintiff to the NYPD's Psychological Services unit, falsely claiming that Plaintiff was suffering postpartum depression and that she was "a danger to herself and others" (*id.* ¶¶ 165-70).

Based on these allegations, Plaintiff has stated a cause of action for refusing to provide her a reasonable accommodation for lactation at work under both SHRL and CHRL. Plaintiff is a woman who needed reasonable accommodation to express milk at work for her infant, and so is a member of a protected class (*see Williams*, *supra*). As noted above, Plaintiff is also an experienced NYPD officer, qualified to hold her position and has identified multiple adverse employment actions that Sahni and/or Wise have taken against her, such as refusing to allow Plaintiff to keep to her breast pumping schedule (*id.* ¶¶ 128-30, 157-64), forcing Plaintiff to work "punitive" overtime details, to interfere with her childcare arrangements (*id.* ¶¶ 152-53), and falsely referring Plaintiff to NYPD Psychological Services immediately after she complained about their

[* 15]

interference with her pumping schedule (*id.* ¶¶ 157-68). These adverse employment actions are not only described as occurring either immediately or shortly after Plaintiff complained about her mistreatment, giving rise to inferences of discrimination (*Thomas*, *supra*, 2018 NY Slip Op 511169 [U], *5), but Sahni is also alleged to have asked the OEEO sergeant who informed him about the approval of Plaintiff's request for accommodating her breast pumping schedule "what he could do to Woo without getting in trouble?" (Complaint, ¶ 135-36), which establishes his retaliatory animus.

As the Appellate Division, First Department, has stated:

> under the broader protections afforded by the State and City HRLs, the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested. The interactive process continues until, if possible, an accommodation reasonable to the employee and employer is reached

(*Phillips v City of New York*, 66 AD3d 170, 176 [1st Dept 2009]).[4]

"The intended purpose of the State HRL cannot be achieved without requiring that employers, in every case, *consider* the requested accommodations by engaging in an individualized, interactive process" (*id. citing* Executive Law § 300 [emphasis in original]). Plaintiff's allegations, which "are entitled to all favorable inferences that can be drawn from" them (*Detmer,* 207 AD2d at 477), show that the NYPD's OEEO accepted her requested accommodation (Complaint, ¶¶ 131-34), but Sahni and Wise, as NYPD's managers and/or supervisory employees, refused to allow her to enjoy its benefits by repeatedly overriding her lactation schedule and by commencing a new round of harassment and retaliation against her (*id.* ¶¶ 135-44, 151-86).

---

[4] In *Phillips,* a City employee sought, but was denied, accommodation for an extended medical leave because of her "serious medical condition – breast cancer," (*id.* at 172), which the First Department found constituted a disability under both state and city human rights laws (*id.* at 190 [reversing dismissal of disability discrimination claims under SHRL and CHRL]). Adhering to *Phillips* is appropriate here, as Exec Law § 292 (21-f) states that "pregnancy-related conditions shall be treated as temporary disabilities for the purposes of this article."

[* 16]

**Admin Code § 8-107**

Defendants concede that the CHRL also requires employers "to provide *a reasonable accommodation*, as defined in section 8-102, *to the needs of an employee* for the employee's pregnancy, childbirth, or related medical condition" (Admin Code § 8-107 [22] [a] [emphasis added]), and that the CHRL requires employers to abide by pertinent rules in providing accommodation for "employee[s] needing to express breast milk" (*see id.* at [22] [b]).

Plaintiff asserts that the NYPD OEEO granted her the accommodation she had sought, that is, leave to pump milk at 11 a.m. and 3 p.m. There is no indication in the Complaint that either Wise or Sahni did anything to facilitate Plaintiff's request. On the contrary, Plaintiff alleges that they sought to deny her the benefit of that accommodation by repeatedly refusing to allow her to adhere to the breast pumping schedule which she had specifically told them she needed and by scheduling her for "punitive overtime" assignments "in order to disrupt her childcare plans." Plaintiff asserts that, when she complained about this misconduct, defendant Wise retaliated by reporting Plaintiff to the NYPD's Psychological Services unit, falsely claiming that she was suffering postpartum depression and was "a danger to herself and others" (Complaint ¶¶ 122-68). Plaintiff has adequately pleaded a cause of action for accommodation under Admin Code § 8-107. Therefore, Defendants' motion to dismiss Plaintiff's causes of action for accommodation under SHRL and CHRL is denied.

[* 17]

**Sexual Harassment and Hostile Work Environment**

"The issue in a *quid pro quo* sexual harassment case brought under the State Human Rights Law is whether one or more employment decisions are linked to unwelcome sexual conduct" (*Franco v Hyatt Corp.*, 189 AD3d 569, 569 [1st Dept 2020]). "Sexual harassment occurs when such unwelcome sexual conduct is the basis, either explicitly or implicitly, for employment decisions affecting compensation or the terms, condition or privileges of employment" (*id.* [citations omitted]). "An employer can also be held liable for a hostile work environment when it encouraged or acquiesced in the unwelcome sexual conduct by an employee or subsequently condoned the offending behavior" (*id.* 189 AD3d at 569-70, *citing Forrest,* 3 NY3d at 311). "Proof of condonation and acquiescence is not necessary where discriminatory conduct is perpetrated by a high-level managerial employee or someone sufficiently elevated in the employer's business organization to be viewed as its proxy" (*id.* [citation omitted]). "Under the City Human Rights Law, gender discrimination rests on the broader consideration of whether a plaintiff has been treated less well than other employees because of his/her gender" (*id.* [citations omitted]). "Whether brought under the State or the City Human Rights Law, the claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences" (*id. citing, inter alia*, *Kim v Goldberg, Weprin, Finkel, Goldstein, LLP,* 120 AD3d 18, 28 [1st Dept 2104] and PJI 9:5, 9:5A).

Here, Plaintiff's difficulties with Sahni started with sexual harassment. After he was promoted to Administrative Lieutenant in May 2021, Sahni offered to help Plaintiff, and later called to tell her that he could get her out of "less popular details," if she went out for a drink with him behind the back of her friend Kaur (Complaint ¶¶ 26-29). Plaintiff further alleges that, when she "refused to get a drink with him alone," Sahni immediately began placing her in "punitive

[* 18]

assignments" (*id.* ¶ 39) and that after she complained about these assignments, Sahni told her "I know what you are doing," referring to her complaints, and immediately increased the number of punitive assignments she received (*id.* ¶¶ 85-86). Plaintiff has adequately pleaded a cause of action for *quid pro quo* sexual harassment against Defendants. Plaintiff has also adequately pleaded a cause of action for a hostile work environment against Defendants, based on the discriminatory conduct of the City's proxies, Sahni and Wise.

### Retaliation

SHRL makes it "unlawful to retaliate against" a person "for opposing discriminatory practices" (*Forrest,* 3 NY3d at 312). Specifically, Executive Law Section 296 (7) states:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [they have] opposed any practices forbidden under this article or because [they have] filed a complaint, testified or assisted in any proceeding under this article.

To establish a *prima facie* retaliation claim, the plaintiff must show that (1) they have "engaged in protected activity," (2) the defendant "was aware that" the plaintiff "participated in" the protected activity, (3) the plaintiff suffered adverse action based upon the activity, and (4) "there is a causal connection between the protected activity and the adverse action" (*Matter of Clifton Park Apartments, LLC v New York State Div. of Human Rights*, 41 NY3d 326, 331 [2024], quoting *Forrest*, 3 NY3d at 312-13).

[* 19]

The CHRL also makes discriminatory retaliation unlawful. Subdivision 7 of the City's Administrative Code Section 8-107, captioned "Retaliation," provides, in pertinent part, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) *opposed any practice forbidden under this chapter,* (ii) *filed a complaint, testified or assisted in any proceeding under this chapter*, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v) *requested a reasonable accommodation under this chapter*, or (vi) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter

(emphasis added).

Subdivision 7 goes on to state that "[t]he retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

Plaintiff asserts that Sahni retaliated against her when she first rejected and then complained about his unwanted sexual advances and that she filed formal complaints of sexual harassment and gender discrimination against him with the NYPD's OEEO, which again prompted Sahni to retaliate by increasing the frequency of punitive assignments Plaintiff received, costing her substantial income and lost pension benefits while this mistreatment continued (Complaint ¶¶ 79-86). Plaintiff alleges that the conduct described was intended to harm Plaintiff financially, to deter her from complaining about discriminatory actions taken against her and was continued when Plaintiff sought and obtained accommodation for leave to pump breast milk at work, leading to further punitive assignments, interference with her pumping and childcare schedules, and a false report to NYPD's Psychological Services unit that Plaintiff was "a danger to herself and others,"

orchestrated by Sahni and Wise (*id.* ¶¶ 121-174). Plaintiff has adequately pleaded causes of action under SHRL and CHRL for retaliation.

**Plaintiff's Cross-Motion to Amend the Complaint**

Plaintiff e-filed her proposed Verified Amended Complaint ("VAC") (NYSCEF Doc. No. 10) on August 8, 2023, as exhibit A to her Memorandum of Law in opposition to Defendants' motion and in support of her cross-motion for leave to amend her Complaint under CPLR 3025 (b) (NYSCEF Doc. No. 9).

The changes reflected in the proposed VAC are supplemental factual allegations, written in red, which expand on the allegations of Plaintiff's earlier pleading. The were presumably added to counter Defendants' arguments in their motion to dismiss. In opposition to the cross-motion, Defendants make no showing of "surprise or prejudice" (*Favourite Ltd., supra*), but instead assert that the proposed VAC is "palpably insufficient or patently devoid of merit" (*citing Lewis v Pierce Bainbridge Beck Price & Hecht*, 205 AD3d 618, 619 [1st Dept 2022]), because the proposed amendments do not add new allegations "with any particularity" but instead "consist of conclusory allegations and conclusions of law."

Defendants' opposition is insufficient to defeat the cross-motion, as Plaintiff's proposed "additional allegations" are neither "irrelevant [n]or inadequate to support" Plaintiff's causes of action (*Empanada Fresca LLC v 1 BK St. Corp.*, 78 Misc3d 1223 [A], 2023 NY Slip Op 50329 [U], *17 [Sup Ct, NY County 2023]).

For example, in the Complaint, Plaintiff avers that, at relevant times, defendant Sahni was a lieutenant in the NYPD, that Wise was an NYPD deputy inspector, and that they were both employed by Defendant City (Complaint ¶¶ 5-6). The Complaint further alleges that Wise became

[* 21]

Commanding Officer of the Precinct in December 2020 and that Sahni was promoted to Administrative Lieutenant in May 2021 (*id.* ¶¶ 24-25).

In the proposed VAC, Plaintiff adds a new paragraph 6, which states "Defendant Wise is four (4) ranks higher than Plaintiff," and a new paragraph 8, which states "Defendant Sahni is two (2) ranks higher than Plaintiff," to further support her allegations that "the discriminatory acts of managers and supervisors against a subordinate employee, such as Plaintiff herein" (proposed VAC ¶¶ 377, 380), provide further detail to Plaintiff's pleading. They are neither "irrelevant [n]or inadequate" support and so Plaintiff's cross-motion for leave to file an amended complaint is granted.

### Conclusion

For the foregoing reasons, it is hereby:

**ORDERED** that Defendants' motion to dismiss is granted to the extent that Plaintiff's third, seventh, eighth and tenth causes of action for disability discrimination are dismissed; and it is further

**ORDERED** that Defendants' motion to dismiss is granted to the extent that Plaintiff's eleventh and twelfth causes of action for strict employer liability are dismissed only as asserted against individual Defendants Sahni and Wise; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's remaining causes of action is denied; and it is further

[* 22]

**ORDERED** that Plaintiff's cross-motion for leave to file an amended complaint is granted, and Plaintiff shall serve the proposed amended complaint herein, conforming with the terms of this decision and order, upon the attorney for Defendants within 20 (twenty) days after service of a copy of this decision and order, with notice of entry thereof; and it is further

**ORDERED** that Defendants have 20 (twenty) days from the date of service of the amended complaint to serve an answer thereto.

This is the Decision and Order of this Court.

| **January 8, 2025** | | | | |
|---|---|---|---|---|
| **DATE** | | | **J. MACHELLE SWEETING, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 23]